# R. CYRUS CABEEN

*v.*

# JOHN MULLIGAN.

1. HOMESTEAD — *abandonment.* When the husband, being the head of a family, and residing with them, removes to another State, with his family, and remains there for two years before he returns, and declares that he expects to remain when he leaves, and after his return that he expected when he left to remain, but it was to his interest to return; his homestead thereby becomes liable to sale on execution.

2. POSSESSION OF HOMESTEAD. Whilst in case of the death of a husband, or of both parents, and the children are of tender years, possession by a tenant may protect the property from sale on execution, yet when the husband is living, the family must reside upon the homestead.

3. RESIDENCE IN ANOTHER STATE. A debtor, who removes with his family to another State, and remains there for two years, may be regarded as having abandoned his homestead, without reference to what he may say before or after his return; by thus leaving he ceased to occupy the homestead, and it becomes liable to sale under execution.

WRIT OF ERROR to the Circuit Court of Mercer county; the Hon. CHARLES B. LAWRENCE, Judge, presiding.

This was a suit in chancery, commenced in the Mercer Circuit Court, to the April term, 1862, by R. C. Cabeen, against John Mulligan. The object of the bill was to set aside a sale and deed made by the sheriff to defendant, of a house and lot of ground, sold under execution, which is claimed to have been exempt from sale, under the homestead exemption law.

The bill alleges, that complainant, on the 12th day of September, 1859, was the owner in fee, and possessed of the S. ½ of lot 9, in block 4, in the town of Keithsburg, Mercer county, Illinois; and on that day Norton, Jewett & Busby, obtained a judgment against complainant in the Circuit Court, for $676.51, on which an execution was issued on the 10th day of November following, which was placed in the hands of the sheriff, who levied it upon the lot, and sold the same to plaintiffs in the execution.

That afterwards, on the 14th day of December, 1858, defendant Mulligan, recovered a judgment, before a justice of the peace, against complainant, for the sum of $93.75, and costs of suit; that on the 8th day of February, 1859, he filed a transcript thereof, in the office of the clerk of the Circuit Court, and on the following day, an execution was issued and placed in the hands of the sheriff; and under which Mulligan redeemed the lot, from the previous sale of Norton, Jewett & Busby, and it was levied upon under Mulligan's execution and sold to him, on the 29th of March, 1859, for $114.14; and on the 6th day of the following April, the sheriff made him a deed.

That these debts were created after the 4th day of July, 1851; that when the judgment was rendered in favor of Norton, Jewett & Busby, complainant was the head of a family, residing with them upon the lot, and so continued, until after the sale by them; that during that time, he had a wife and children; that there was a dwelling house on the lot, erected and occupied by him as a homestead, and that he did not relinquish his right of homestead to any person; that when Mulligan purchased, he was not residing on the lot; but was still the head of a family, residing with them; that he left the premises temporarily, intending to return, and after an absence of two years, he did return, and occupied the premises with his family.

That when he left the premises, he leased them to a tenant for one year, with the privilege of three, and the tenant occupied them about one year, and then delivered them to complainant; that the house and lot, is not worth more than one thousand dollars; that the debts were not contracted for the purchase or improvement of the lot.

The bill was afterwards amended. And by the amended bill, the same facts were alleged, and that complainant left the premises on the first day of June, 1857, and returned after a lapse of about two years, and has occupied the premises with his family ever since.

Defendant filed an answer to the bill, by which he admitted its material allegations. He, however, alleged that complainant was indebted to him in the sum of $1,100, for money loaned and goods sold to him, prior to the 4th of July, 1851, and on the 1st of December, 1856, he executed to defendant two promissory notes, payable in one and two years from that date, and executed a mortgage upon the premises described in the bill, to secure the payment of the same. A replication was filed, and the cause was heard, at the same term, on bill, answer, replication and proofs. It was agreed that the following was all the proof heard in the case:

"That Cabeen left about the 1st of June, 1857; that he owned the premises in fee in controversy; that he erected a dwelling-house on the premises; that he was the head of a family and residing on the premises to the time he left; that he leased said premises to one Edward Hazleton for one year, with the privilege of three years; that he assigned said lease to Thomas B. Cabeen when he left; that Cabeen then moved to Stockton, in the State of Minnesota, with his family, at the instance of James Stockton, who represented that he had a hotel there and that he wanted Cabeen to come up and keep the same for him; that he moved to said place, stating before he went that if he liked and could do well he would stay, but that if he could not, he intended to return. He remained in Minnesota about two years, and returned; that during the whole time of his absence the premises were occupied by said Hazleton as his tenant, and until about three months after the return of said Cabeen, and before the termination of said lease the said Cabeen took possession of said premises with his family, and resided in the same on said premises during the whole time up to the present time. That Thomas B. Cabeen, during the time, received the rents and profits of said premises and applied them to the payment of complainant's indebtedness, during the time, the same was so leased; that was all the real estate said Cabeen had in this State at the time; that said Cabeen

did keep said hotel in said Stockton, as he intended to do; that after the return of said complainant, he said that when he left he expected to remain in Minnesota— he had expected to do well there, but that he afterwards found it to his interest to return to Keithsburg."

The court dismissed the bill, and rendered a decree against complainant for costs; to reverse which the case is brought to this court; and the following errors are assigned:

1.   The decree should have been for complainant.
2.   The court erred in rendering a decree for defendant.
3.   In rendering a decree for costs against complainant, and
4.   In not granting the prayer of the bill.

Mr. H. M. WEED for plaintiff in error:

1.   The object and purposes of the homestead act are so to protect the homestead as to shield it from the claims of creditors, and from the improvidence of the husband, for the benefit of the wife and children. This law is remedial in its nature, and must be so construed as most effectually to accomplish the ends in view. *Pardee* v. *Lindley*, 31 Ill., 174; *Deere* v. *Chapman*, 25 Ill., 610.

2.   Actual residence on the property is not always indispensable in order to preserve the rights given by the homestead act. Within the meaning of the law, a person may have actual possession, actual occupation, without residence. The occupation may be preserved for the benefit of the family by a tenant, or by the storage of the household furniture, etc., for a period. If the citizen or family should leave, in search of another house, even though they should go to a distant State for that purpose, and being disappointed, should return to their former house, they would not thereby lose their rights under the homestead act. *Walters* v. *The People*, 18 Ill., 194; *Walters* v. *The People*, 21 Ill., 178; *Kitchell* v. *Burgwin*, 21 Ill., 40; *Vanzant* v. *Vanzant*, 23 Ill., 536.

3.   So long as one has his domicil in this State he can avail himself of the provisions of the homestead act.   Cabeen did not lose his domicil here by his absence in Minnesota.   The change of domicil must be  determined  by  the intention of the party, and in  this  case  the  evidence  is not sufficient to establish any such intention on the part of Cabeen.   To prove a change of  domicil it must be made to appear, not only that the old domicil has been abandoned, but also that a new one has been acquired; so that a  domicil  being once fixed, will continue,  notwithstanding  the  absence  of  the  party, until there is a substitution of a new one.   The intention to abandon a  domicil and actual residence at another place, if not accompanied with the  intention of remaining  there permanently, or at least for an indefinite time, will  not  produce a change of domicil.   10 Pick., 77; 1 Met., 250; Story on Conflict of Laws, Ch., III.

4.   The right to the  homestead  is a right cast upon the wife for her benefit, and the benefit of her children, of which she and they cannot be deprived in any other way than that prescribed by the act itself.   The abandonment of the homestead by a widowed mother would not prejudice the rights of her children ;  would  the  abandonment  by  the husband prejudice the rights of the wife ?   This right of homestead on the part of the wife and her children, is equally inviolate, in spite of creditors or husband, as her right to the separate property which she may own in fee, or her right to dower in her husband's estate.   The husband cannot compel the wife to release her rights under the homestead act; can he, by compelling her and her  children to abandon the homestead, deprive her of these rights ?  Can he thus accomplish indirectly what the law will not allow him  to  do directly ?   Can her rights under this law be taken away, except by a release or waiver executed of her own free will, or by an abandonment of one homestead and the acquiring of another ?   Suppose Cabeen had  died the moment he reached Minnesota, could not his .wife and children have returned to Keithsburg and held the homestead ?   Or, suppose husband and wife both

died there, could not the children claim the homestead? If not, how were they to live?  *Walters* v. *The People,* 21 Ill., 178 ; *Pardee* v. *Lindley;* 31 Ill., 174.

Messrs. J. R. & J. N. BASSETT for defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the court :

This record presents a question of fact for determination. It is, whether plaintiff in error abandoned his homestead, so that a judgment previously recovered, and under which a sale had been made, and a transcript of a judgment before a justice of the peace, became valid liens upon the homestead. Up to the time plaintiff in error moved to Minnesota, the premises were undoubtedly protected from sale under execution, by the operation of the homestead law. But he left his home, and removed with his family to Minnesota, and with them, resided there for two years. He stated before leaving the State, that if he liked the country, and could do well in his business, he would remain, but if not, he would return. And after he came back to his former residence, he stated that when he left, he expected to remain in Minnesota, but found it to his interest to return to Keithsburg. From these statements, it is manifest that he left with the design of remaining, and of abandoning his former home. He says he expected to remain in Minnesota.

Whilst this court has held that an actual residence is not, under all circumstances, essential, yet, as a general rule, it is requisite, to protect the homestead from sale on execution. To carry out the object of that Statute, it may become necessary, when the husband is dead, and especially so, when both parents have died, and the children, entitled to the benefit of the law, are of tender years, that a residence by a tenant may be substituted for an actual occupancy by the widow or the children. But it is only in such cases, and under peculiar circumstances, that the actual residence of of the person claiming the benefit of the act can be dispensed with.

This was the rule announced in substance in *Walters* v. *The People*, 21 Ill., 178, and *Kitchell* v. *Burgwin*, 21 Ill., 40. It was, however, said that we could lay down no rule to govern such cases, but each case must depend upon its own peculiar circumstances, so that among them no evidence shall be found of an abandonment of the husband and family.

In this case, we think that a removal by himself and family, for the period of two years, to another State, and ceasing to occupy the premises, was evidence of an abandonment by the owner of his right to claim the homestead. This, we think, is true, without reference to what he said before or after his return. That could not change the question, of whether he had ceased to reside upon the place. His intention may have been a material question, as to whether he had ceased to be a resident of the State, but could not operate upon the question of whether he had ceased to occupy his homestead. If he might remove his family and effects to another State, and remain there with them for two years, and still claim his former residence as exempt from sale under the homestead law, we are at a loss to conceive how long an abandonment it would require to subject it to the payment of his debts. To permit such an abandonment, without rendering the property liable to forced sale, would be to enable debtors to perpetrate frauds upon their creditors that could not have been designed by the general assembly when the act was adopted.

The judgment of the court below must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE LAWRENCE, having tried the cause in the court below, took no part in this decision.