## GEORGE TITMAN

*v.*

## JOSHUA J. MOORE.

1. HOMESTEAD — *occupation by the widow.* This court has held, that, under the second clause of the first section of the homestead law, a widow entitled to claim its benefits, and in infirm or delicate health, does not lose the benefit of the act by leaving the homestead to remain temporarily with her friends, for the benefit of her health, leaving the premises occupied by a tenant during her absence.

2. *Occupancy, after the husband has abandoned the family.* And it has also been *held,* that, under the amendatory act of 1857, where the husband abandoned his wife and family, she might remain and hold the homestead as against his acts or those of his creditors.

3. Also, that a husband by being temporarily absent while in pursuit of a new home, did not thereby forfeit the right to claim his homestead.

4. NEW RESIDENCE — *when a waiver of the homestead.* But a person having acquired a new residence, although not a homestead, cannot be permitted to insist upon the homestead right, to defeat a deed or mortgage executed by

him while occupying such newly acquired residence, and which fails to release the benefit of the act, unless it clearly appears that the new residence was only temporary.

5. So, where a person left his farm, and removed to a town six miles distant, where he voted at two local elections, first renting his farm for three years, at the end of one year terminating that agreement, and renting it anew for five years, and, after having been eighteen months absent from his farm, executed a mortgage, which did not release the benefit of the homestead act, — *held*, that the mortgagee took his lien free from the operation of the homestead act, and that the right to a homestead was not restored by a subsequent return to, and residence on, the farm.

6. ABANDONMENT — *effect as to subsequent liens.* The husband, being the head of the family, has the right to determine and control their residence; and, when he intentionally removes from and abandons the homestead, and his family accompanies him, neither he nor they have any power to resume it, so as to cut off intervening liens, which have attached during such abandonment.

7. OCCUPANCY — *by the husband, different from that of the family.* The homestead law seems to imply by its terms, that, where its benefits are claimed by the husband, it must appear, that he occupied it as a residence, lived upon it, and made it his home, and that of his family ; and thus an occupancy of a husband by a tenant is not sufficient. But a simple occupancy by the widow or the children is sufficient, and their occupancy may be by a tenant.

8. *Temporary abandonment by the husband.* While the court adhere to the former decisions, that a debtor may leave his home for temporary purposes without losing the benefit of the homestead act, they also hold, that the intention to return and occupy it as a homestead, must be clearly manifested by surrounding circumstances.

9. LIENS — *how affected by the acts of the debtor.* The right to claim the benefit of the homestead act, is controlled by the situation of the property at the time the debt was contracted, or the lien attached, and not by the subsequent acts of the debtor and his family. If the premises are not exempt at the time of creating the debt or lien, a subsequent possession of the homestead would not exempt it. On the other hand, the homestead may have been exempt at the time the debt was contracted, and become liable by its subsequent abandonment.

WRIT OF ERROR to the Circuit Court of Fulton county ; the Hon. C. L. HIGBEE, Judge, presiding.

George Titman filed a bill in chancery, in the Circuit Court of Fulton county, at the June Term, 1861, against Joshua J. Moore and Ann A. Moore, his wife, asking for the foreclosure

of a mortgage. There was a decree entered by default, and a sale thereon. In February, 1863, the master made his report of the sale to the court, and it was approved. On the 2d day of March, 1863, upon the motion of Moore, the order approving the report was set aside. Moore thereupon moved the court to set aside the decree of foreclosure and the sale, upon the alleged ground, as set forth in his own affidavit, that the mortgaged premises were his homestead, and had been sold by the master without reference to his rights in that regard therein. This motion was overruled, and a writ of error was sued out by Moore, and the case was heard and determined in this court on the errors assigned, at the January Term, 1864. See *Moore* v. *Titman*, 33 Ill. 358, where a full statement of the facts in the case up to that time will be found. The opinion then rendered disposed of all the questions in this case, except that of homestead. Upon that point it says:

"Where the master proceeds to execute the decree, he must, like a sheriff under an execution, ascertain whether the homestead right exists. If so, he must proceed in the manner pointed out in the statute, to make the sale under the decree. And if he fail to do so, the defendant may, after the coming in of the report, enter his motion to set aside the sale. Upon that motion the court will hear the evidence of the parties and determine the question of whether the right exists, and if so, set aside the sale."

Under this ruling the case went back to the Circuit Court. On the 15th day of September, 1864, Titman filed in the Fulton Circuit Court his affidavit, in response to the affidavit of Moore, claiming a homestead.

This affidavit alleged, that, on the 13th of August, 1858, Moore being then indebted to Titman, obtained a further loan from Titman, and in consideration thereof executed the mortgage; that Moore at that time resided with his family, and had his home in the city of Canton, six miles distant from the said premises; that said premises were then occupied and cultivated by other persons; that shortly before the execution of the mortgage, Titman was informed both by Moore and his wife that they

had resided and had their home in Canton for more than a year before that time. Upon the two affidavits the Circuit Court referred the cause to the master in chancery, to hear and report the testimony upon the issue "whether the right to claim a homestead exemption by the defendants existed or not."

The evidence is very voluminous. It supports the allegations of the affidavit of Titman as stated above, and shows also that Moore voted on the 28th of December, 1867, the 5th of April, 1858, and the 4th of April, 1859, at the city elections in the city of Canton; Daniel Bricker and John Bricker, formed a partnership with Moore, and took a written lease for the premises in controversy, from him about Christmas, 1856. About that time Moore moved to Canton. This lease was for three years, but was canceled by agreement at the end of one year, and in the spring of 1858, the Brickers gave up the possession. During the year of 1858, William Williamson resided on the premises, under a verbal contract with Moore for a partnership in the farm, stock, etc., for five years. In April, 1859, Moore returned to the farm with his family.

Upon hearing the evidence, the court decreed, that as against Titman, Moore was entitled to a homestead. The former sale and decree were set aside. The master was directed to sell the premises, setting apart the homestead as provided in the statute. Titman now brings the cause to this court upon a writ of error, to reverse the decree.

Mr. J<span>OHN</span> S. W<span>INTER</span>, for the plaintiff in error.

Mr. N. B<span>USHNELL</span> and Messrs. J<span>OHNSON</span>, H<span>OPKINS</span> & P<span>OW</span>-<span>ELL</span>, for the defendants in error.

Mr. C<span>HIEF</span> J<span>USTICE</span> W<span>ALKER</span> delivered the opinion of the Court:

Had defendants in error abandoned their right to claim the benefit of the homestead exemption in the mortgaged premises at the time that instrument was executed? It appears, that defendants in error had left the farm, and were, with their

family, residing in the city of Canton, and had been for about eighteen months when the mortgage was given. The farm is distant about six miles from the city. When they removed to the city, Moore rented a house and resided in it with his family. When he left the farm he placed a person in possession, under a written agreement, that the latter should stock and cultivate the farm, and that they should equally divide the profits or losses. This agreement extended to the period of three years. At the end of the first year, however, the arrangement terminated, and another person went into possession of the farm, under a verbal agreement, for five years, the terms of which were similar to those made with the first occupant.

This court has held, that under the second clause of the first section of the homestead law, a widow entitled to claim its benefits, and of infirm or delicate health, does not lose the benefit of the act by leaving the homestead to remain temporarily with her friends, for the benefit of her health, leaving the premises occupied by a tenant during her absence. Again, that under the amendatory act of 1857, where the husband abandoned his wife and family, she might remain and hold the homestead against his acts, or those of his creditors. And that a husband by being temporarily absent while in pursuit of a new home, did not thereby forfeit the right to claim his homestead.

Upon a careful examination of the first section of the act, it will be perceived, that the language in reference to the occupancy, during the life of the husband, and after his death, is different, and seems to imply, that it was intended to provide for different kinds of occupancy. The first clause exempts the property held by the debtor, and "occupied as a residence," while, in the second clause, the right is reserved to the widow and family after the death of the husband, for the limited period, "some of them continuing to occupy such homestead." The first clause requires the occupancy to be as a residence, while the other is satisfied simply by an occupancy. This would seem to imply, that it was intended, that where the right is claimed by the husband, it must appear, that he

occupied it as a residence, lived upon it and made it his home and that of his family; while, under the second clause, an occupancy seems to answer the requirement. And premises may be occupied by a tenant, whose possession is considered that of his landlord. And this construction would seem to be imperatively required to render the right available to children of tender years, where both parents are dead. Otherwise, the right would be useless to them.

The husband, being the head of the family, has the right to determine and control their residence. And, where he intentionally removes from and abandons the homestead, and his family accompanies him, neither he nor they have any power to resume it, so as to cut off intervening liens which have attached during such abandonment. Where a lien attaches during such abandonment, it is no more defeated by returning to and regaining possession than if there had been a regularly executed release of the right. Such return would operate as a new homestead right as to all subsequent debts and liens, but could not affect prior claims any more than if it had not been previously occupied as a homestead. The right to claim the benefit is controlled by the situation of the property at the time the debt was created or the lien attached, and not by subsequent acts of the debtor and his family. While the homestead may be exempt when the debt was contracted, by its subsequent abandonment the homestead would become liable; but if not exempt at the time of creating the debt, the subsequent possession of the homestead would not exempt it. That can only be accomplished by the debtor by paying or discharging the debt.

In the case of *Cabeen* v. *Mulligan*, 37 Ill. 230, this court held, that, where a person, having the right to hold the homestead against his creditors, leases it to another person, and removes from the State with his family, saying at the time he would remain if he found it to be his interest to do so, but otherwise he would return, he could not assert the right as to prior creditors after an absence of two years.

In the case we are now considering, defendants in error had

been residing in Canton, some six miles distant, between one and two years, when the mortgage was executed. The farm was then in the occupancy of a tenant, under an agreement, that he was to have the possession for between four and five years. And when they left the farm, the exclusive right to its possession had been transferred to another for three years. It is true, that this contract terminated by agreement at the end of the first year, but Moore then manifested no intention to return. On the contrary, he made a verbal agreement, that another person should occupy it for five years. While this latter agreement may have been within the statute of frauds, unless taken out of its operation by a part performance of the contract, still as to the question of intention on the part of Moore, as to the future occupancy of the farm as a homestead, it does not matter. These contracts clearly show, that he did not design to return again to the farm until the expiration of the time embraced in the latter lease, or agreement.

Again, the evidence shows, that while he resided in Canton, he voted at two of the city elections. From this fact we are compelled to conclude, that he then regarded Canton as his residence. It is true, that the evidence shows, that he at times spoke of returning to the farm, and to reside upon it; at other times he spoke of selling the farm and going south to find a new residence; and he seems to have entertained a variety of plans for his future life, and to have left the question of his return to the farm to be governed by circumstances. And the whole of the evidence, when considered, we think, shows that his purposes for his future course were neither definite nor fixed. And while in this state of uncertainty he made the mortgage on the farm, which he now claims was then his homestead.

While we adhere to our former decisions, which hold that the debtor may leave his home for temporary purposes, without losing the benefit of the right to the homestead exemption, we also hold, that the intention to return and occupy it as a homestead must be clearly manifested by the surrounding circumstances. But we cannot hold, that a person, having acquired a new residence, although not a homestead, can be permitted to

insist upon the homestead right, to defeat a deed or mortgage executed by him while occupying such newly acquired residence, but which fails to release the benefit of the act, unless it clearly appears that the new residence was only temporary. From an attentive examination of the entire evidence in the case, we are compelled to hold, that the homestead right was abandoned at the time this mortgage was executed, and that plaintiff in error acquired his lien free from the operation of the homestead act; and the right was not restored to Moore by his subsequent return to and residence on the farm. The decree of the court below, allowing Moore the benefit of the act, must be reversed and the cause remanded.

*Decree reversed.*