JOHN BUCK

*v.*

JOHN CONLOGUE.

1. HOMESTEAD EXEMPTION—*abandonment.* B and wife executed to C a conveyance of their homestead, but the deed did not operate to release the homestead right. B continued in the occupancy of the premises after the execution of the deed, under a lease from C, and paid rent therefor. Subsequently B died, leaving a wife and one child, who remained in possession for a time, when the widow intermarried with one M and removed to another town, taking the child with her, and leased the premises to A, appropriating the rents to the education of the child. *Held,* in an action of ejectment brought by C against A, that the homestead right was lost by act of B's widow in abandoning the possession, and that C was entitled to a recovery.

2. SAME—*exemption is not lost—by the act of the grantor in taking a lease from his grantee.* By the mere act of B in taking a lease of the premises from C after the conveyance, and paying rent therefor, no forfeiture was incurred of the right to assert the homestead exemption, either on the part of B in his lifetime, or his widow and child after his death, while they continued to occupy the homestead.

3. SAME—*abandonment.* But B's widow, by her intermarriage with M, and removal with her child to a different town and taking up her residence upon premises owned by her husband, acquired a new home, and by its acquisition lost the right of homestead in the premises.

4. SAME—*intention of returning must be clear.* In such cases, the proof of an intention on the part of the claimant to return and occupy the homestead, must be clear and satisfactory, in order to preserve the right.

5. FORMER DECISIONS. The cases of *Booker* v. *Anderson*, 35 Ill. 67 ; *Moore* v. *Dunning*, 29 ib. 130 ; *White* v. *Clark*, 36 ib. 285 ; *Moore* v. *Titman*, 43 ib. 169, and *Cabeen* v. *Mulligan*, 37 ib. 230, cited and considered, the last two cases being held to fully govern the present one.

6. SAME—*abandonment by the widow—deprive the children of the right.* After the death of B his widow became the head of the family, and by her marriage, and abandonment of the homestead, the child also lost the right to claim the statutory privilege as completely as if the abandonment had occurred during the life of B and by his act.

APPEAL from the Circuit Court of La Salle county ; the Hon. MADISON E. HOLLISTER, Judge, presiding.

The opinion states the case.

Messrs. BULL & FOLLETT, for the appellant.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of ejectment, instituted in the La Salle Circuit Court, by appellee, to the June term, 1866, against appellant, for the recovery of lots 9 and 10, in block 94, in the city of La Salle. The plea of the general issue was filed, and a trial had at a subsequent term of the court, without a jury, by consent of the parties, which resulted in a judgment in favor of plaintiff, and to reverse which defendant brings the case to this court by appeal.

On the trial in the court below appellee read in evidence a deed for the property in controversy from George H. Buck and wife to appellee, which bears date on the 26th day of January, 1858. It appears to have been duly acknowledged, and the wife released her dower in the premises, but there was no release of the homestead right by the grantors. It

further appears that George H. Buck was in the actual pos-
session of the premises at the time the conveyance was made;
that Buck and family resided upon and occupied the premises
before and at the time of the conveyance, as a homestead, and
that he rented of appellee and paid him rent on several occa-
sions for the use of the property; that he so continued to
occupy the property until his death, and his widow and minor
child continued to occupy it as a home after his death ,until
she intermarried with one Morse, when she removed to Ster-
ling, taking her infant child with her; that she rented the
property to a tenant, and has applied the rent to the education
of the child, who is a daughter, and was twelve or thirteen
years old at the trial in the court below.

It further appears from the testimony of appellant, that it
has been the intention of Mrs. Morse to return to reside upon
the premises. It also appears that her husband owns a house
in Sterling and that they reside in the same.

It is urged in favor of a reversal, that Mrs. Morse and her
daughter are entitled to hold the premises as a homestead, and
that appellant, being her tenant, may show and rely upon that
fact as a bar to a recovery. That George H. Buck in his life-
time. and until the sale of the premises, had a right to insist
upon the homestead, there seems to be no doubt. But whether
he still retained it after the sale and receiving a lease and
paying rent for the premises presents a different question. In
the case of *Booker* v. *Anderson*, 35 Ill. 67, where a debtor had
executed a deed of trust with a power of sale, but neither he
nor his wife had relinquished the homestead, and after the
maturity of the debt the premises were sold under the power
contained in the deed of trust and the creditor became the
purchaser, and the debtor leased the premises constituting the
homestead for a year from the purchaser, and the latter having
brought forcible detainer to recover possession, on a bill filed
to enjoin that suit, it was held that inasmuch as there had been
no release of the homestead so as to bar its assertion, it might

50—49TH ILL.

be claimed and enforced notwithstanding the lease and pay-
ment of rent. So, in this case, the wife did no act that then
barred her from asserting her right of homestead after her
husband's death, and she continued to hold the right from that
time until her subsequent marriage and removal to reside with
her husband at Sterling. The execution of the deed by the
husband and wife without releasing the homestead right,
or the lease and payment of rent by the husband, did not
prevent them in his lifetime, or his wife and child after his
death, from claiming the statutory privilege.

Although the right of homestead was retained by Mrs.
Morse after the death of her former husband, she undoubtedly,
by her subsequent marriage, removal to, and residence with
her husband in Sterling, abandoned it. The length of time
that had elapsed after her removal to Sterling does not appear,
but the evidence shows that her husband owns property there
and resides upon it with his wife and family. And there is
no evidence in the record from which it can be inferred that
she and her husband, at the time of her removal to Sterling,
had any intention of returning to La Salle to reside, or that
they, at any time prior to the trial below, had any such fixed
and settled purpose. It is true the witness says she had such
a design, but when it was to be executed and carried into
effect does not appear. Such loose, indefinite purposes are not
sufficient to preserve the right where the claimant is residing
at a different place and on other premises. *Moore* v. *Titman*,
43 Ill. 169. In *Moore* v. *Dunning*, 29 Ill. 130, it was held
that the abandonment by the husband of his home and wife
and family did not prejudice their right to claim the benefits
of the act if they still continued to occupy the homestead;
and to the same effect is *White* v. *Clark*, 36 Ill. 285. On the
contrary, it has been uniformly held, that where the husband
removes from the homestead with his family and acquires
another home, the right is lost. *Moore* v. *Titman, supra,* and
*Cabeen* v. *Mulligan,* 37 Ill. 230. These last two cases fully

govern this, as the evidence of the abandonment by the widow is as clear and satisfactory as it was in those. From the evidence in the case we are satisfied that there was such an abandonment by the widow as precludes her from asserting the right. Her husband's home is her home, and she cannot insist that she has not acquired a new one; and by its acquisition she lost the right of homestead.

But the question still remains to be determined whether the daughter, by the mother's marriage and abandonment of the homestead, lost the right to insist upon the benefit of the statute. In the case of *Wright* v. *Dunning*, 46 Ill. 271, it was said, after the death of the husband, the widow, being under no disability, may abandon the homestead precisely as could the husband. Whenever it appears that it has ceased to be her home and she has acquired another place of permanent abode, she thereby loses all right to claim the statutory privilege; or even if she abandons it with the intention of not returning to it again as her home, the right would be lost. But if, from sickness or other necessary cause, she were to leave temporarily, with the intention of again returning, it would be otherwise.

We have seen that the mother in this case had acquired a new home, and abandoned the property in controversy as a residence, and had thereby lost the right to insist upon the statute. And as the father, as the head of the family, may abandon the homestead so as to deprive his wife and children of the right, for the same reason, where the mother becomes the head of the family, she, by abandoning the homestead, would in the same manner deprive the children of the benefit of the law. After the death of the father the mother becomes the protector of the children, and where she permanently removes from the homestead, or acquires a new residence, it must produce the same effect upon the rights of the children, under the act, as if the abandonment had occurred while under the protection of the father. The mother having acquired a

new home and abandoned the old one, it follows that appellant has no right to invoke the statute as a defense.

The judgment of the court below must be affirmed.

*Judgment affirmed.*