HERMAN KLOSS

*v.*

J. WYLEZALEK *et al.*

*Opinion filed February 17, 1904.*

1. HOMESTEAD—*widow cannot have two homestead rights at the same time.* A widow who re-marries and goes with her second husband to his home abandons her homestead rights in the first husband's property although she leaves the second after six months and returns to the old home, where there is nothing to show that it is not her right and duty to return to her second husband or that she will not avail herself of such right.

2. SAME—*an equivocal intention to return is not sufficient to prevent abandonment.* One cannot cease to occupy homestead property with the intention to return, or not, according to future circumstances and conditions, and still retain the homestead right.

3. SAME—*abandonment of homestead by widow is binding upon minor children.* Abandonment by a widow of the homestead property deprives the minor children of their homestead right in property.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. B. R. BURROUGHS, Judge, presiding.

H. CLAY HORNER, for plaintiff in error.

GORDON & IROSE, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Emanuel Wylezalek was the owner of the north-west quarter of the south-west quarter and the west fractional half of the north-west quarter of section 24, etc. He, together with his wife, Michalena, mortgaged both tracts to plaintiff in error, releasing, we assume, their right of homestead, which, however, is immaterial in the decision of this case. Afterwards the husband died intestate, leaving surviving him Michalena, his widow, and six children. The widow gave a second mortgage to plaintiff in error on the same land. She, of course, had no right in the fee at that time which she could mortgage, but thereafter two of the children died intestate and unmarried, and she inherited their undivided interest, being one-ninth thereof, which, by virtue of the last named mortgage, with its covenants of warranty, inured to the plaintiff in error and became subject to his second mortgage. Whether the homestead right was released in that mortgage does not appear. After the death of the two children he filed a bill to foreclose both mortgages in one proceeding, and a decree of sale was rendered in pursuance thereof, under which the first piece of land above described was sold to satisfy the first mortgage and the one-ninth of the second tract was sold to satisfy the second mortgage. Plaintiff in error obtained a deed for said undivided one-ninth and then filed this bill to partition the said fractional quarter. By his bill he sets up title to the undivided one-ninth thereof in himself and to two-ninths in each of the four surviving children, their interest subject to their mother's dower. Decree for partition was rendered finding all interests as set up in the bill, but decreeing the eight-ninths owned by the children subject to a homestead right in their mother as well as dower. Commissioners were appointed to set off the

dower and homestead and make partition, but they reported that dower and homestead could not be assigned and partition made, appraising the value of the premises at $300. The court approved their report and entered a decree ordering the land sold subject to said dower and homestead, and from that decree plaintiff in error has sued out this writ.

There is but one controversy between the parties in this court, and that is, whether or not the circuit court committed error in adjudging homestead to the surviving wife of Emanuel Wylezalek in the eight-ninths of said land and ordering the same sold subject thereto. There was, in fact, no issue in the court below on that question raised by the bill and answer, but it seems that this omission is not insisted upon in this court.

The testimony shows that the widow, after the death of her husband, re-married, and is known in this record as Mrs. Gorzney. She testified as follows: "After marrying said Gorzney I left my said homestead of my deceased husband and went to reside on a lot in Chester, Illinois, on which lot said Gorzney resided. Said lot was, and yet is, owned by said Gorzney and occupied by him as a homestead, and was so owned by him prior to our marriage. I lived with him on said lot in Chester for about six months, when, as we could not agree, I went back to the real estate sought to be partitioned in this suit, and have resided thereon with my children ever since. I am still the wife of Stanislaus Gorzney and he still lives on said lot in Chester. My children did not live on the premises sought to be partitioned while I was living with said Gorzney. Some of my children went with me to Chester, some did not. Some remained in the country. I did not move all my things to Chester, but left some of them on the place. We moved to Chester with the intention of trying it and to see if we could get along and like it, and if we did not we could move back. We could not get along and moved back."

It was insisted in the court below, and is again urged
here by counsel for the plaintiff in error, that upon this
testimony, which was all that was introduced on that
subject, the widow had abandoned whatever homestead
rights she had in the premises in question, and we think
the position well taken.   When she married her second
husband and removed with him to his homestead in Ches-
ter, she unquestionably intended to, and did, at least
for the time being, abandon her home on this land.   She
does not claim that she did so with a purpose and inten-
tion of returning and re-occupying the old home.   All
that she claims is, that she went to Chester with the
intention of trying it and to see if she could get along
and like it, and if not, could move back, and then says,
"we could not get along and moved back."   For anything
appearing in her testimony she may at any time again
change her mind and return to her husband's homestead
and continue to live there, and there is nothing what-
ever in this record to show that it is not her duty, as
his wife, to do so.   "Where there is a removal from the
homestead premises it will be taken as an abandonment,
unless it clearly appears that there is the intention to
return and occupy it."   (*Jackson* v. *Sackett*, 146 Ill. 646,
and cases cited.)   An equivocal intention to return is
not sufficient.   (*Cabeen* v. *Mulligan*, 37 Ill. 230.)   In other
words, a person cannot cease to occupy a homestead
with the intention that he or she may or may not return,
depending upon future conditions or circumstances, and
still retain the homestead right.

The case of *Buck* v. *Conlogue*, 49 Ill. 391, is somewhat
similar in its facts to the case at bar, with the distinc-
tion that it there appeared that after her second mar-
riage Mrs. Morse (the party claiming the homestead and
removing with her husband to property owned by him
in Sterling) still entertained the intention of returning
with her husband to the former home in LaSalle, but
when that intention was to be executed did not appear,

and she had not returned at the time the action was brought in which she attempted to set up her homestead rights. We there announced the uniform holding of this court to be, "that where the husband removes from the homestead with his family and acquires another home, the right is lost,"—citing *Moore* v. *Titman,* 43 Ill. 169, and *Cabeen* v. *Mulligan, supra.* And we further said: "From the evidence in the cause we are satisfied that there was such an abandonment by the widow as precludes her from asserting the right. Her husband's home is her home, and she cannot insist that she has not acquired a new one, and by its acquisition she lost the right of homestead."

That a party cannot, under our statute, have two rights of homestead at the same time is too well settled to need the citation of authority, and we are at a loss to perceive how the claim of Mrs. Gorzney to a homestead in this land can be sustained without violating that well settled principle. The fact that she had returned to the premises before this proceeding was begun is, we think, unimportant. As already said, for anything appearing in this record she may at any time lawfully and with perfect right return to the home of her husband, and she does not even say that she does not intend to do so. His home being her home, and it being her duty, as his wife, to live with him, every presumption must be that she will perform her duty in that regard. If the husband should die, she could unquestionably, on the facts in this record, claim and maintain her right of homestead in the Chester property. Having an undisputed right of homestead there she cannot have it here. That her abandonment terminated the right of homestead in her children has also been repeatedly decided. Although infant children have rights in the homestead, they are necessarily under the control of their parents during the joint lives of the latter, and as the mother becomes the head of a family upon the death of the father, her abandonment of

the homestead will deprive such children of their homestead rights. *Shepard* v. *Brewer*, 65 Ill. 383.

It is insisted, however, by counsel for defendants in error, that under his bill and the decree of the circuit court plaintiff in error cannot question the decree below in adjudging homestead. Their position is, that, inasmuch as he claims by his bill but one-ninth of the property in fee, and the decree gave him that, he has received all he asked for, or that as the homestead is decreed only against the eight-ninths he cannot complain. However plausible the contention may at first impression seem to be, we do not regard it as sound. The interests as set up in the bill, though distinct, were held by the parties in common, and, as shown by the report of the commissioners, with the homestead upon the undivided eight-ninths, could only be severed by a sale of the premises. Had the court decreed the eight-ninths to the children subject only to dower, as averred in the bill, the sale might have been, and presumably, in the absence of proof to the contrary, would have been, void and the tenancy in common severed by partition. The law favors partition of land among tenants in common rather than a sale thereof and a division of the proceeds, and it is only when the land itself cannot be partitioned that a sale may be ordered. In this view of the law we think the decree of the court below erroneously adjudging homestead to Mrs. Gorzney was harmful to plaintiff in error, and therefore he has the right to complain.

The power to order a sale subject to the homestead is not involved here. That and other questions which might arise upon the record are waived by counsel and not here considered.

For the reason stated the decree of the circuit court will be reversed and the cause remanded to that court, with directions to proceed in accordance with the views herein expressed.                   *Reversed and remanded.*