(No. 22709.

F. A. HOLTERMAN, Appellee, *vs.* A. A. POYNTER *et al.* Appellants.

*Opinion filed October 24, 1935—Rehearing denied Dec. 5, 1935.*

618

STONE, C. J., and JONES, J., dissenting.
HERRICK, J., took no part.

J. G. THOMAS, and WIRT HERRICK, for appellants.

HARLEY C. HELM, and A. C. & BEN F. ANDERSON, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The appellee, F. A. Holterman, brought a forcible entry and detainer action in the circuit court of Douglas county against A. A. Poynter and Aveyrilla Poynter, his wife. In that suit defendants filed a plea setting up that the real estate involved had been sold under execution; that it was their homestead and worth less than $1000, and that the sheriff's deed made pursuant to the sale was void. Holterman then filed a bill in chancery to restrain the Poynters from asserting that defense. The prayer of the bill was not only that appellants be enjoined but that Holterman be decreed to be entitled to the possession of the land. The master's report was favorable to Holterman and the decree granted the relief prayed. Poynter and wife have appealed to this court.

The premises consist of a house and lot in the city of Arcola, in Douglas county. The title was in Mrs. Poynter. On March 27, 1931, Holterman obtained a judgment by confession against appellants in the circuit court of Coles county for $526.81. An execution was issued and appellants filed a schedule of their personal property. No levy was made upon any property in Coles county. A transcript

of the judgment was filed in the office of the clerk of the circuit court of Douglas county. An execution was issued out of that office on May 4, 1931, and a levy was made on the real estate. On June 4 the premises were sold at sheriff's sale and Holterman became the purchaser. No homestead was set off to appellants. The Poynters did not redeem within the period allowed by statute and a sheriff's deed was issued to Holterman September 6, 1932.

The proof shows the value of the property to be less than $1000. Appellants and their two sons occupied it from November 18, 1928, until March 1, 1930, when they moved to a Coles county farm in which Mrs. Poynter had a life estate. They left a part of their household goods in a closed room of the house in Douglas county and rented the remainder of the premises to Ray Black. He moved in on March 18, 1930, and lived there until December 9, 1931. Before March 1, 1932, appellants returned to the premises, which they now occupy.

Appellants testified that when they moved to the farm they did not intend to leave the Arcola home permanently but intended to keep it as their home and return to it. Lucy Black, David Shelby, Gilbert Basham and appellants' son, Everett Poynter, testified to conversations with appellants before the levy and sale in which they made similar statements. John Eisle, police magistrate in Arcola, A. A. Poynter, and Edward Poynter, another son, testified that on May 9, 1931, Holterman and his attorney told Poynter, in Eisle's office, that he had a judgment in Coles county and would levy on the Arcola property, and that Poynter told them they could not do that because of his homestead right in it. Edward Poynter testified that a similar conversation took place at the farm between his father and appellee. Holterman testified that no claim of homestead was ever made to him before the sale. His attorney testified that nothing was said in his presence in Eisle's office about a homestead.

Attorney Robert F. Cotton represented appellants prior to the sale. He testified that before the levy was made on the Arcola property he had a conversation with appellants; that they desired to procure a loan on the property; that there was a question as to how long a time they could get; that they did not want any sale made at that time and wanted to put it off; that he advised them that Holterman could be required to proceed against real estate before levying on personal property, and that they would have twelve months and their creditors three additional months in which to redeem the real estate after its sale. He also said appellants told him that was what they wanted done; that they authorized him to require the sheriff to proceed against the real estate, and that they made no claim to him of any homestead rights in the property. He said that he called on the sheriff the next morning and told him of the directions he had received from his clients and tendered the Arcola property to the sheriff for sale under the execution. The sheriff replied that it would be a more expensive route, but Cotton said, "It was the way they would have to go." A. A. Poynter testified that he asked Cotton if they had a homestead right in the property, and that he replied he did not think they had. Poynter also said they did not authorize anybody to tender the Arcola property to the sheriff. He testified further that he told Cotton they claimed a homestead in the premises.

Both appellants voted at a township election in Coles county held on April 5, 1932. One of the judges of the election testified that their right to vote was questioned, whereupon Poynter said his wife had moved to Arcola to send his children to school; that he was residing on the farm in Humboldt township, and that he still had that for his voting place and it was his home. One of the clerks of the election testified to the same effect. Poynter denied making these statements, and testified that he told the clerk

of the election that he lived in Arcola and did not live in Coles county.

Holterman and his attorney testified they never heard of any claim of homestead until they attempted to obtain possession of the property, and that in causing the sale they relied upon the tender to the sheriff made by appellants' attorney. Holterman paid two years' taxes on the property, amounting to $92.25, costs of about $50, and has kept the house insured for $600. He testified that he would re-convey the property upon being reimbursed for the amount of his debt, interest, costs and taxes.

Upon the hearing the chancellor found that appellants were not occupying the premises when the transcript was filed nor when the sale was made; that prior thereto they occupied the premises as a homestead; that they moved to the farm, leaving a portion of their household goods in the residence; that there was no abandonment of their homestead in the premises, but that they authorized their attorney to tender the property for sale under the execution and were thereby estopped from claiming their homestead exemption.

As grounds for reversal appellants urge that there are only two methods by which a homestead estate can be extinguished—i. e., by a conveyance in writing acknowledged in the same manner as conveyances of real estate are required to be acknowledged, or by abandonment; that appellants were under no duty to manifest any intention to avail themselves of the benefit of the Homestead Exemption law; that the premises were exempt, and under the doctrine of *caveat emptor* appellee took nothing by the sale. On the other hand, appellee claims that appellants' tender of the property estops them from claiming their exemption and amounted to an abandonment of their homestead rights.

Two questions are presented by this appeal: First, was there an abandonment of the homestead by appellants? and

second, are appellants estopped to claim a homestead? On the question of whether there was an abandonment the decision in *Imhoff* v. *Lipe*, 162 Ill. 282, is in point. The master and chancellor both found there was no abandonment here, and in the *Imhoff case* a jury found, on practically the same state of facts, there was no abandonment, and we sustained that finding. We there held that a judgment debtor need not perform any act or manifest any intention in order to avail himself of his homestead exemption. If a sale of his homestead is made he may assert his right to it either by bill or otherwise. He may abandon his homestead, but he can waive it only in the manner prescribed by the statute. He need not object to the levy of an execution upon his homestead, for the reason that a sale and conveyance under an execution would be without authority in law and would not affect his title to his homestead. With reference to voting while the party claiming homestead was absent from his home and his intention to leave it was conditional rather than absolute, we said: "The principle is, where a person leaves his residence with only a conditional intention of acquiring a residence elsewhere, he does not lose his residence so long as his intention remains conditional. The intention is material. [Citing *City of Beardstown* v. *City of Virginia*, 81 Ill. 541, and other cases.] In *O'Hair* v. *Wilson*, 124 Ill. 351, where one voted without right in another State, it was held he did not lose his residence and right to vote here. *Cobb* v. *Smith*, 88 Ill. 199, as to the abandonment of homestead, is not an authority in conflict with the case of *O'Hair* v. *Wilson*. In the *Cobb case* the appellee voted in the county to which he had removed. The question being whether there was an abandonment of the homestead, it was held that the fact of his having voted was evidence of an intention and purpose to change his residence, but it is further said (p. 201): 'He testified that he could not say he was permanently settled in Mason county; that he might

find a place to do better or might return to Jacksonville. He nowhere says he intended, or even expected, to return. * * * This evidence falls far short of proving he then, or ever, had any intention of returning to his former home.' The evidence in this record was sufficient to authorize a finding that there was no intention to abandon the homestead and sustains the verdict." The same thing is true with reference to the testimony here. Appellants did not by their testimony make the admission found in the stipulation contained in *Scogin* v. *Scogin*, 337 Ill. 427, relied upon by appellee. The effect of the admission in the *Scogin case* was that the claimant had no intention of ever returning to live on the isolated farm there in question. The chancellor committed no error in finding that there was no abandonment here.

There is much conflict in the testimony as to certain conversations with Robert F. Cotton, who was appellants' attorney before the sale. It is improbable that appellants would empower him to direct the sheriff to sell the Arcola property if they were anxious to make a loan, pay the debt and thus save their home, when they could have prevented any sale by the assertion of their homestead rights. They were under no duty to act and could stand by and require appellee to follow the law and not molest their homestead. For the purposes of this decision we are assuming that the testimony of Cotton is correct, and yet we are of the opinion that there can be no estoppel. He testified that he was only directed to require the sheriff to levy first on the real estate. Appellee contends that by this action appellants are estopped from claiming their homestead. In support of this he relies upon section 11 of "An act in regard to judgments and decrees," etc., in force July 1, 1872, as subsequently amended. (Cahill's Stat. 1933, p. 1710; Smith's Stat. 1933, p. 1732.) It provides: "The person in whose favor execution is issued, may elect on what property not exempt from execution he will have the same levied, pro-

vided personal property shall be last taken." We have held that this provision is for the benefit of the judgment debtor and he may waive any right to it. (*Bingham* v. *Maxcy*, 15 Ill. 290.) This section by its plain terms gives the plaintiff no right to levy on exempt property, and a mere direction to levy on real estate cannot be construed to be a waiver of homestead. Section 4 of the statute on exemptions (Cahill's Stat. 1933, p. 1411; Smith's Stat. 1933, p. 1462;) provides that no release, waiver or conveyance of the estate so exempted shall be valid unless the same is in writing. Manifestly, section 11 above can be of no assistance to appellee. He is presumed to know the law which exempted appellants' homestead from the lien of appellee's judgment until and unless the homestead was released. Appellee should have obtained a release of the homestead in the manner provided by statute. A mere direction to sell real estate first cannot amount to a waiver of homestead upon any theory of estoppel.

The rules laid down for the guidance of a creditor or any other person dealing with land in which a homestead may exist, at page 285 in *Imhoff* v. *Lipe*, 162 Ill. 282, are: " 'First, is the defendant a person on whose behalf or on behalf of whose family a homestead exemption can be acquired; second, have the measures necessary for acquiring such exemption been taken with reference to the real estate on which the levy is to be made; third, is the defendant's title or estate such as can be held as a homestead under the statute; fourth, is the use to which the property is put such as wholly or partially destroys its character as a homestead; fifth, does the property exceed in area or value the limit prescribed by statute; sixth, is the parcel upon which the levy is desired so distinct or distant from the family residence that it cannot, in law, be deemed a part of the homestead; seventh, has there been any abandonment of the homestead rights; eighth, conceding that the valid homestead claim exists, is the liability upon which

the writ issued one against which this claim can be asserted?" And this must be done without waiting for any claim on the part of the defendant."

Speaking through Justice Scholfield, in *Gruhn* v. *Richardson,* 128 Ill. 178, we said: "Even the fraudulent acts of the party entitled to a homestead are not allowed to divest that right.—*Leupold et al.* v. *Krause,* 95 Ill. 440." At page 445 of the *Leupold case* appears the following: "Neither fraud, nor even the commission of a criminal offense, can work a release or forfeiture of the right of homestead. Such release or forfeiture can only be accomplished in the manner provided by the statute." The same result is sought where an estoppel is created as is sought where fraud is shown, viz., the prevention of an advantage to the party making the representation or who is guilty of a fraud, or the prevention of a harm to the adverse party, who is either the victim of the fraud or who has been induced to change his position to his detriment by the representations or conduct of the party against whom the estoppel arises. Although actual malice need not motivate the representations or conduct acted upon to work an estoppel, (*Milligan* v. *Miller,* 253 Ill. 511,) there must be a change in position by the adverse party to his detriment. The record contains no evidence which would show that the Poynters owned personal property that was subject to execution and that a levy upon their personal property would have resulted in a satisfaction of the judgment, and there is no presumption that the Poynters owned sufficient personal property to satisfy their debts. They are shown to have filed a schedule of their personal property, as to the value of which Holterman furnished no proof. In this state of the record Holterman gave up nothing and made no change in his position to his detriment even if he acted upon the representations of the Poynters' attorney, Cotton.

The principal object to be effectuated by the creation of the homestead estate is to protect the householder and

his family in the enjoyment of a home and to secure them a shelter beyond the reach of his improvidence or financial misfortune. Considerations of sound public policy affecting the general interest were involved in and contributed to the enactment of the statute by which the estate is created. The estate of homestead is created by section 1 of the statute on homestead, and section 4 provides that it may be extinguished only by an instrument which shall be acknowledged in the same manner as conveyances of real estate are required to be acknowledged, or by abandonment. Section 27 of the Conveyance act, which provides that in order to be effectual to convey or encumber the homestead estate the instrument executed to accomplish either purpose must contain a clause in the body thereof, and also in the certificate of acknowledgment, expressly releasing or waiving such estate. We have held that this section must be strictly followed. In *Ogden Building Ass'n* v. *Mensch,* 196 Ill. 554, a mortgage which was acknowledged before a notary public who was a stockholder in the building association was held to be ineffective to convey the homestead of the mortgagor, because the notary was disqualified to take the acknowledgment by his interest in the mortgagee association, even though the mortgage deed and its acknowledgment purported to waive homestead. In *Gage* v. *Wheeler,* 129 Ill. 197, we held that a mortgage which purported to release the homestead estate of the mortgagor was ineffective for that purpose because the acknowledgment did not recite that the mortgagors were personally known to the acknowledging officer. In *Leonard* v. *Crane,* 147 Ill. 52, we held that the homestead could not be released if the acknowledgment contained no statement that homestead was intended to be released. It is well settled that all deeds or instruments of writing for the alienation of a homestead are invalid as to it unless the homestead is released in the manner prescribed by the statute, and if a mortgage contains no release or waiver of the

homestead a court of equity cannot make the mortgage effectual against such estate. (*Steger* v. *Traveling Men's Building Ass'n,* 208 Ill. 236, 244; *Stodalka* v. *Novotny,* 144 id. 125.) In order that a deed shall pass the homestead right of the grantors it must contain a special release of that right. Where the homestead is not specifically named as conveyed, no general language in the deed, though it comprehend every claim, interest and estate, of whatever description, at law or in equity, in express terms, will pass the right or estop the householder from asserting it as against anyone claiming under the deed. (*Redfern* v. *Redfern,* 38 Ill. 509.) These cases show conclusively that the doctrine of estoppel has never been applied in cases of homestead and that the only methods of releasing homestead are those provided in the statute. Surely, if the doctrine of estoppel were ever to apply it would be in conveyances like those in the above cases.

The chancellor was correct in finding that there was no abandonment of the homestead of appellants but erred in finding that appellants were estopped from claiming it because of directions to the sheriff to sell the real estate first.

It is not necessary to determine whether appellants' communications to their attorney, Cotton, were privileged.

For the reasons indicated, the decree of the circuit court of Douglas county is reversed and the cause is remanded to that court, with directions to dismiss the bill of appellee for want of equity.

*Reversed and remanded, with directions.*

Mr. JUSTICE HERRICK took no part in this decision.

JONES, J., and STONE, C. J., dissenting:

The master reported a finding, which the chancellor approved, to the effect that appellants were estopped to claim a homestead because they had directed the sheriff to levy upon and sell the real estate in satisfaction of appellee's judgment. It was also found that subsequent to the sale

appellee had paid two years' taxes on the premises, together with about $50 in costs which accrued because of the sheriff's sale.

The majority opinion appears to hold that if a homestead has not been abandoned, or if it has not been waived in strict accordance with the provisions of the statute, no circumstances whatever can exist which will prevent a claim of homestead. In other words, it tacitly holds that the doctrine of estoppel *in pais* can never be invoked against a claim of homestead, and the doctrine of *caveat emptor* applies in this case. With the two last mentioned conclusions we are in utter disagreement. If, as was found by the chancellor, appellants directed the sheriff to sell their real estate in preference to their personal property, and appellee became the purchaser and afterwards paid out a considerable sum of money in taxes and costs, an estoppel *in pais* arose, which ought to bar appellants from asserting a claim of homestead.

The act pertaining to judgments, decrees and executions (Cahill's Stat. 1933, chap. 77, sec. 11,) provides: "The person in whose favor execution is issued, may elect on what property not exempt from execution he will have the same levied, provided personal property shall be last taken." It will be observed that appellants had no right of election except as to property not exempt. Their act in electing to turn the real estate out in preference to their personal property in satisfaction of the judgment debt must be treated as a confirmation of their previous declarations of abandonment of the homestead. Any other interpretation, it seems to us, would sanction the perpetration of a fraud upon appellee, and would, in the language of *Cabeen* v. *Mulligan,* 37 Ill. 230, enable debtors to perpetrate frauds upon creditors that could not have been designed by the General Assembly when the Homestead act was adopted. Its provisions were enacted for the purpose of protecting the *bona fide* right to homesteads and were not intended

to operate as a shield to relieve against fraudulent transactions and misrepresentations of the claimant. It is the universal rule, even in States which have statutes prescribing the method by which homesteads may be waived, that equitable estoppel may be invoked, under certain circumstances, to defeat the operation of the Homestead law. 13 R. C. L. sec. 119, p. 662.

A debtor may always waive his privilege and consent that his exempted property may be applied to the payment of his debts. (*Jensen* v. *Cannell,* 106 Me. 445.) In that case the court held the exemption was waived by the debtor's attorney telling the officer to go ahead. In *Ponder* v. *Webb,* 1 Ky. L. 335, it was held that where a debtor informed the officer that if certain property was not levied on he would surrender other property which was exempt, and the officer accepted the offer, the debtor could not afterwards withdraw the surrender by claiming exemptions. In *Parsons* v. *Cooley,* 60 Iowa, 268, it was held that where a person who is not living upon premises formerly occupied as a homestead requests a creditor to levy an attachment upon the premises he will be deemed to have abandoned the right to set up any homestead claim as against the attachment. In *Church* v. *First Nat. Bank,* 255 Mich. 595, 238 N. W. 192, it is said that beyond question one entitled to an exemption in property may, if he sees fit, waive such right in the event of a levy and execution sale. The opinion quotes an expression of Mr. Justice Cooley in another case, as follows: "A person who had induced another to act upon the supposition that a certain state of facts exists, may by such conduct preclude himself from disproving such facts; and we may readily suppose a case in which a woman may so act in reference to lands in which she has a right of dower as to make this principle applicable." *Wright* v. *DeGroff,* 14 Mich. 164.

*Wilson* v. *Daniels,* 79 Iowa, 132, 44 N. W. 246, was an action to set aside a sheriff's deed after sale upon ex-

ecution. In the opinion the court said: "He directed the sheriff to levy on the property and sell it on the execution. * * * The fact that the plaintiff directed the levy to be made ought to preclude him from claiming any homestead. It is true that when the plaintiff removed from the house he left some property therein, such as carpets, window shades, and the like, and that in 1879 he filed a claim of homestead in the county recorder's office and had it recorded, and he testifies that he did not intend to abandon his homestead. But this cannot be held to overcome his acts and declarations tending to show an abandonment."

In *Maring* v. *Meeker*, 263 Ill. 136, we stated: "It is sometimes said, and is argued here, that a person is not estopped by his silence and omission to give notice of existing rights, but that rule does not apply in a case where a land owner has actively encouraged and induced the injured party to act. 'In the latter case the party making the declaration acted on will be estopped although he may have been ignorant of his true rights. The other party may rely on his representations without further inquiry and act upon the assumption that he is cognizant of his rights and knows the condition of his own title.'" *Moore* v. *Gilmer*, 353 Ill. 420, *Robbins* v. *Moore*, 129 id. 30, and *Cross* v. *Weare Commission Co.* 153 id. 499, announce the same principle.

Where one by his words or conduct willfully causes another to believe in the existence of a certain state of things and induces him to act upon that belief so as to alter his own previous position, the former is precluded from averring against the latter a different state of things as existing at the time. *Niantic Bank* v. *Dennis*, 37 Ill. 381; *Pease* v. *Ritchie*, 132 id. 638.

It is to be remembered that a homestead right is not the only right which the courts regard, and there are rules of law which they will not overturn merely because they are urged to do so in the name of homestead protection.

(*Brown* v. *Coon,* 36 Ill. 243.) Appellants do not come within the rule as to silence respecting their rights. On the contrary, they tendered the Arcola property and required the sheriff to levy on it. Appellee relied upon their action and made no further attempt to collect from any other property of either of them. Manifestly, the doctrine of *caveat emptor* has no application to the facts in this record. The statute exempting homesteads should be liberally construed so as to give the fullest measure of protection under it, (*Scogin* v. *Scogin,* 337 Ill. 427,) but we think it is clear that under all the circumstances of this case the tendering of the Arcola property was, in effect, a waiver or abandonment of appellants' homestead right therein and thereafter estopped them to assert that right. They gained nothing by returning to the premises after the sale. It might operate as a new claim of homestead as to subsequent liens but it could not affect the prior rights of appellee. *Titman* v. *Moore,* 43 Ill. 169.

An estoppel *in pais* affecting permanent interests in land can only be made available in a court of equity. It cannot be allowed in an action of forcible detainer. (*St. Louis Stock Yards* v. *Wiggins Ferry Co.* 102 Ill. 514; *Grubbs* v. *Boon,* 201 id. 98; *First Lutheran Church* v. *Lutheran Church,* 316 id. 196.) Complainant was compelled to resort to a court of equity for his relief, and upon the filing of his bill that court acquired jurisdiction to grant the injunctional relief prayed for and also to dispose of all questions arising between the parties, whether legal or equitable, pertaining to the subject matter of the suit and to do complete justice between the parties. *McIntyre* v. *McIntyre,* 287 Ill. 544; *United Artists Corp.* v. *Thompson,* 339 id. 595.

We think the decree of the circuit court should be affirmed.