# SAMUEL JACKSON *et al.*

## *v.*

# ALFRED M. SACKETT *et al.*

*Filed at Springfield October 27, 1893.*

1. CHANCERY — *waiver of answer to supplemental bill.* Where the complainants in a bill voluntarily go into a hearing without asking for a rule on the defendants to answer a supplemental bill, or seeking to have them defaulted for want of an answer, the complainants will be regarded as having waived the formality of an answer, and the case will be treated the same as though an answer denying the allegations of the bill had been filed, especially when such supplemental bill contains no allegations of fact not in the original bill and a bill of revivor, which are answered.

2. It has often been held by this court that parties going to trial willingly, without formal issues made up, will be considered as having waived the required formality to make up an issue.

3. SAME — *preserving the evidence.* In proceedings in chancery it is incumbent on the party seeking to sustain a decree in his favor, to preserve the evidence upon which it is based, in the record, in some proper form; and when this is not done, no presumption will be entertained that evidence sufficient to sustain the decree, not appearing in the record, was heard. When the bill is dismissed for want of equity the evidence need not be preserved.

4. SAME — *modes of preserving the evidence.* There are several modes in which the evidence may be preserved in the record. Thus, depositions on file become *ipso facto* parts of the record; and the same is true of evidence embodied in the report of the master. These were regarded as parts of the record before the statute allowing oral testimony in equity, and that rule is not changed by the statute.

5. Where evidence is taken orally in open court, it must be preserved by a certificate of evidence; but when the decree recites the facts found by the court from the evidence, it will be presumed, in the absence of anything in the record showing the contrary, that the facts thus found were proved by competent evidence. But although the decree may recite that oral evidence was heard, it will not be presumed that such evidence was heard, there being no certificate, except so far as the facts proved and found by the court are recited in the decree.

6. SAME — *decreeing affirmative relief to defendant without cross-bill.* On bill to enjoin the prosecution of an action of ejectment, and to set aside certain levies and sales under execution, the defendant, having

filed no cross-bill, will not be entitled to any affirmative relief. In such case, when the complainant fails on the hearing, the proper decree is that the bill be dismissed for want of equity, and it is error to order the possession of the premises to be given to the defendant. The appointment of a receiver pending the action will not change the suit.

7. INJUNCTION—*dissolution—remedy of defendant.* On the dissolution of an injunction restraining the prosecution of an action of ejectment, the defendants will have their remedy for the rents and profits, *pendente lite,* on the injunction bond, and they should be left to that remedy, and their action for *mesne* profits, after their recovery of judgment in ejectment. But when a receiver has been appointed and has collected the rents and profits, he will be discharged on paying into court such rents and profits, and those moneys will be held to apply on any judgment for rents and profits the defendants may recover after judgment in the ejectment suit.

8. HOMESTEAD—*may be lost by abandonment.* A party may, by removal from premises occupied by him as a homestead and entering into business at another place and voting there, without the intention of returning to his former home, abandon his homestead, so as to render the same liable to levy and sale under a judgment and execution against him.

9. Where there is a removal from the homestead premises it will be taken as an abandonment, unless it clearly appears that there is an intention to return and occupy the same.

10. SAME—*evidence of the adoption of a new one.* While the fact of a party offering to vote, or even voting, at a particular place, may not be conclusive of the fact of his residence in a collateral proceeding, as it is possible he may have voted illegally, yet such acts are, as against him and those claiming under him, evidence tending to show the intention with which he removed to the place where his vote is offered; and when to that is added the oath prescribed by statute to entitle him to vote on challenge, the evidence will be very strong that a change of residence was intended.

WRIT OF ERROR to the Circuit Court of DeWitt county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Mr. R. A. LEMON, and Mr. WILLIAM MONSON, for the plaintiffs in error:

Thomas Jackson's temporary absence from the property was not an abandonment of his homestead therein. *Moore* v. *Flynn,* 135 Ill. 74.

A court of equity treats the title as being where, in good conscience, it should be. *Rankin* v. *Barcroft*, 114 Ill. 455.

The fact that Thomas Jackson voted at the election in 1886, at Morris, after a residence of ninety days, did not forfeit his residence and homestead at Clinton, Illinois. *Potts* v. *Davenport,* '79 Ill. 455; *Hayes* v. *Hayes*, 74 id. 312; *Smith* v. *People*, 44 id. 16; *Wilkins* v. *Marshall*, 80 id. 74.

The defendants were not entitled to affirmative relief without a cross-bill setting up their rights. *Anderson* v. *Henderson*, 124 Ill. 164.

It is incumbent on the party seeking to sustain a decree, to preserve the evidence on which it is based, either under a certificate of evidence, or in the decree itself. *Moss* v. *McCall*, 75 Ill. 195; *Marvin* v. *Collins*, 98 id. 510; *Waugh* v. *Robbins*, 33 id. 182; *Bressler* v. *McCune*, 56 id. 475; *Nichols* v. *Thornton*, 16 id. 113.

Where the case is referred to the master, and the parties ruled, as in this case, to close their proofs, and the master reports the same, no more complete certificate of evidence could be made than the report of the master. *Eaton* v. *Sanders*, 43 Ill. 435.

Messrs. MOORE & WARNER, for the defendants in error:

In order to be a legal voter of any election district in this State a person must be a resident of such district, and it must be his permanent abode. Secs. 65 and 66 of the act of 1872, in regard to elections; Starr & Curtis, secs. 66, 68, chap. 46; *Pells* v. *Snell*, 130 Ill. 384; *Behrensmeyer* v. *Kreitz*, 135 id. 635; *Moffett* v. *Hill*, 131 id. 239.

Thomas Jackson, by moving his family to Morris, Grundy county, Illinois, in 1885, and remaining there with it as his home since that time, and in making affidavit, when his right to vote there in 1886 was challenged, that he was a qualified voter of that district, it being his residence and permanent abode, and by continuing to vote there at each succeeding

election, abandoned whatever homestead right he may have
had in the property in controversy.  *Cabeen* v. *Mulligan*, 37
Ill. 235; *Titman* v. *Moore*, 43 id. 174; *Maher* v. *McConaga*,
47 id. 392; *Cahill* v. *Wilson*, 62 id. 138; *Fisher* v. *Cornell*, 70
id. 216; *Cobb* v. *Smith*, 88 id. 201; *Farnan* v. *Borders*, 119
id. 230; *Pells* v. *Snell*, 130 id. 384; *Moffett* v. *Hill*, 131 id.
244; *Behrensmeyer* v. *Kreitz*, 135 id. 635.

The decree showing that oral and other testimony was heard
in open court that is not preserved by a certificate of evidence,
and that the court found as a fact the defendants in error were
the owners of the premises in controversy and entitled to their
possession, it will be presumed there was testimony introduced
sustaining that finding.  *Corbus* v. *Teed*, 69 Ill. 208; *Morgan*
v. *Corlies*, 81 id. 75; *Rhoades* v. *Rhoades*, 88 id. 139; *Brown*
v. *Miner*, 128 id. 156.

This court has repeatedly held, that when parties volun-
tarily go to trial without having the issue formally made up,
it will be considered they waived the formality.  *Corbus* v.
*Teed*, 69 Ill. 209, and cases there cited.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Mary Jackson
against Alfred M. Sackett, Henry Rennick and Sarah M.
Palmer, to restrain the prosecution of a certain action of
ejectment, and to set aside and cancel certain levies, sales
and sheriff's deeds.   The bill alleges that the complainant is
the owner and in possession of certain real estate, consisting
of a lot 132 feet long and 88 feet in width, in the city of Clin-
ton, DeWitt county; that she purchased the lot for a valuable
consideration and obtained a conveyance thereof from Thomas
Jackson, December 27, 1887, her deed being filed for record
February 2, 1888; that Thomas Jackson and Ezekiel Jackson
purchased the lot from Duncan McArthur, who conveyed the
same to them jointly by deed dated June 8, 1870; that at that
date, Thomas Jackson took possession of the lot and occupied

it with his family as a homestead, until he conveyed it to the complainant; that in 1879, Thomas Jackson purchased of Ezekiel Jackson his interest and paid him therefor the sum of $400, and that they, being ignorant of the proper modes of conveying title to real estate, simply erased the name of Ezekiel Jackson from the deed executed by McArthur, believing that to be all that was necessary to pass Ezekiel Jackson's interest to Thomas Jackson, but afterward, on learning that that was not sufficient, Ezekiel Jackson, on the 27th day of April, 1887, executed a quit-claim deed of his interest to Thomas Jackson.

The bill further alleges that, December 6, 1883, Alfred M. Sackett and Henry Rennick recovered a judgment in the Circuit Court of DeWitt county against Thomas Jackson and Ezekiel Jackson for $697 and costs, and that on the 19th day of March, 1887, an execution issued on such judgment was levied on the lot in question, and that April 23, 1887, the lot was sold under the execution for $115, Sackett and Rennick becoming the purchasers, and that on July 24, 1888, they received a sheriff's deed therefor.

Also, that on March 7, 1880, Sarah M. Palmer recovered a judgment against Thomas Jackson, in the same court for $483.78 and costs, and that January 17, 1887, an execution on that judgment was issued to the sheriff, who levied the same upon the lot in question, and on March 5, 1887, sold the lot at execution sale for $200, Sarah M. Palmer becoming the purchaser, and that on July 3, 1888, the sheriff executed to her a sheriff's deed in pursuance of such sale.

That Sackett and Rennick, and Sarah M. Palmer, at the March Term, 1890, of the Circuit Court of DeWitt county, commenced an action of ejectment against Heber Morse, the complainant's tenant, to recover possession of the lot, and that such suit is pending and undetermined, and is now on the trial docket of the court; that owing to the strict rules of law applicable to the action of ejectment, the plaintiff in that

suit will succeed in obtaining judgment against the complainant's tenant for that interest in the premises sold by Ezekiel Jackson to Thomas Jackson, by reason of the informal manner in which the conveyance was attempted to be made, unless restrained by injunction from so doing.

That Thomas Jackson, from 1870 to 1886, lived on the lot with his family, and occupied it as a homestead, and that while he has since been sojourning in Morris, Illinois, he has only done so temporarily, and had intended, up to the time he sold and conveyed the lot to complainant, to return thereto and make it his home; that the lot was the homestead of Thomas Jackson at the time of the rendition of the judgments, and the levies and sales thereunder, and that it was therefore exempt from execution, up to the time the complainant purchased it; that during all that time it was not worth $1000, and that no proceedings. were had to set off the homestead of Thomas Jackson, and therefore that the levies, sales and sheriff's deeds were without authority of law and so were null and void.

The bill prays that these levies and sales, and the deeds executed in pursuance thereof, be set aside and declared null and void, and that the further prosecution of the ejectment suit be restrained by injunction.

After the bill was filed, the complainant died, and her death being suggested on the record, Mary P., Alexander and Samuel Jackson and Garcie Stansfield, claiming to be the heirs at law of the complainant, appeared and were substituted as parties complainant in her stead. They thereupon filed a supplemental bill, in the nature of a bill of revivor, setting up their rights as the legal representatives of the deceased complainant, and adopting the allegations and averments of the original bill, and praying in their own behalf the same relief prayed in the original bill.

The defendants, in their answer to the original and supplemental bill, deny that Mary Jackson was the owner or in

possession of the lot in question, or that she purchased and obtained a conveyance thereof from Thomas Jackson as alleged. They admit the conveyance from McArthur to Thomas and Ezekiel Jackson, but deny that Thomas Jackson took and retained possession of the lot and occupied it with his family as a homestead as alleged in the bill. They admit that Thomas Jackson moved with his family to Morris, as stated, but deny that he did so with the intention of returning to the lot and occupying it at any time. They deny that he purchased Ezekiel Jackson's interest, or that a conveyance of such interest was attempted to be made in the manner stated, but allege that they or one of them have, since the commencement of the litigation out of which the present bill has grown, altered the deed from McArthur by erasing the name of Ezekiel Jackson, with the hope and intention of defeating the defendants in their efforts to collect their demands honestly due from them. They also deny that Thomas Jackson afterwards obtained a quit-claim deed from Ezekiel Jackson as alleged.

They admit the recovery by Sackett and Rennick, and also by Sarah M. Palmer, of the judgments, and also the execution to them of the sheriff's deeds alleged in the bill, and that no proceedings to set off a homestead were had, but allege that Thomas Jackson had no homestead in the premises and they deny that the lot was worth no more than $1000. They admit the commencement of the ejectment suit, and that Mary Jackson died as alleged, but they deny that she left her surviving the husband and heirs mentioned in the supplemental bill, and they deny all the other allegations of the bill.

Afterwards the present complainants filed a further supplemental bill, setting up substantially the same matters already alleged by them, and praying for a partition between them of the premises in question according to their respective interests, or in case they can not be divided without manifest injury to the parties in interest, that they be sold and the proceeds divided among them.

To this supplemental bill no answer seems to have been filed, nor were any steps taken by the complainants to compel an answer, or to have the bill taken *pro confesso* as against the defendants for want of an answer. On application of the defendants, a receiver of the lot in question *pendente lite* was appointed, and the possession thereof was ordered to be turned over to him. Afterward the cause was referred to a master to take proofs, and subsequently it came on for hearing on pleadings and proofs, no notice being taken of the fact that the supplemental bill was not answered, and at such hearing the court found that, at the date of the commencement of the ejectment suit, the defendants were, and from thence hitherto have been and still are the owners in fee, as tenants in common, of the premises in question, and it was therefore adjudged and decreed that they were entitled to the immediate possession thereof, as tenants in common; that the injunction theretofore issued in the case be dissolved; that the receiver immediately deliver possession of the premises to the defendants, and that he make report of his receivership by the next term of court; and the defendants having filed their suggestions of damages on dissolution of the injunction the cause was continued to the next term for the hearing of such suggestions. To obtain a reversal of that decree, the complainants have brought the record to this court by writ of error.

The complainants contend that it was error for the court to hear the cause and render a final decree without first requiring an answer to the supplemental bill, or disposing of that bill in some manner known to chancery practice. This contention is without force. So far as is shown by the record, the complainants voluntarily went to trial without asking for a rule on the defendants to answer the supplemental bill, or seeking to have them defaulted for want of an answer, and under these circumstances they will be regarded as having waived the formality of an answer, and the case will be treated the same as though an answer denying the allegations of the

bill had been filed. "This court has often held, that parties going to trial willingly, without formal issues made up, will be considered as having waived the required formality to make up an issue." *Corbus* v. *Teed,* 69 Ill. 205. See also *Strohm* v. *Hayes,* 70 id. 41, and cases there cited.

It should also be observed that the supplemental bill contains no allegations of fact which were not already in the original bill and bill of revivor, and those facts had all been fully answered by the defendants, so that an answer to the supplemental bill would have been merely a duplication of the answer already filed. That answer was doubtless regarded by both parties as sufficient to meet all of the complainants' allegations, and while no order was entered extending or applying the answer on file to the supplemental bill, the parties seem to have proceeded to the hearing upon the tacit understanding that it should have that effect. At any rate, no tenable ground can be seen upon which the complainants can now assign for error the want of an answer to their supplemental bill.

It is next contended by the complainants that the decree is contrary to the evidence, and this contention is met, in the first place, by a suggestion on the part of the defendants, that under the recitals of the decree, it will be presumed that evidence not preserved in the record, sufficient to warrant the findings of the court, was heard. The record contains no certificate of evidence, but the depositions of various witnesses are on file, and there is also on file the report of the master to whom the cause was referred to take proofs, such report containing various deeds and other documents offered in evidence by the parties, and also the testimony of a number of witnesses. There is no affirmative recital that the transcript contains all the evidence adduced at the hearing, and the decree recites that the cause was heard on the pleadings, the report of the master, and upon written, documentary, record, oral and other proofs heard in open court. The decree recites

that, upon such hearing, the court found that the defendants, on March 7, 1890, the date of the commencement of the ejectment suit, were the owners of the premises in question in fee simple, as tenants in common, and entitled to the possession thereof, and that at the same date, Heber Morse, the defendant in the ejectment suit, was unlawfully in possession of the premises, and unlawfully retained the possession thereof from the defendants in this suit.

It is well settled that, in proceedings in chancery, it is incumbent upon the party seeking to sustain a decree in his favor, to preserve the evidence upon which it is based in the record in some proper form, and that when this is not done, no presumption will be entertained that evidence sufficient to sustain the decree not appearing in the record was heard. *White* v. *Morrison,* 11 Ill. 361; *Stacey* v. *Randall,* 17 id. 467; *Bennett* v. *Whitman,* 22 id. 449; *James* v. *Bushnell,* 28 id. 158; *Waugh* v. *Robbins,* 33 id. 182; *Quigley* v. *Roberts,* 44 id. 503; *Wilhite* v. *Pearce,* 47 id. 413; *McIntosh* v. *Saunders,* 68 id. 128; *Driscoll* v. *Tannock,* 76 id. 154; *Marvin* v. *Collins,* 98 id. 510. There is perhaps one case where no evidence need be preserved to sustain the decree, and that is where it dismisses the bill for want of equity, as that is the decree which the court would be bound to render in case of a total failure of evidence.

But there are various modes in which the evidence may be preserved in the record. Thus, depositions on file become *ipso facto* parts of the record, and the same is true of evidence embodied in the report of the master. These were regarded as part of the record before the statute allowing oral testimony in equity, and the rule in that respect remains the same since that statute as before. *Smith* v. *Newland,* 40 Ill. 100. Where evidence is taken orally in open court, it must be preserved by a certificate of evidence, but where the decree recites the facts found by the court from the evidence, it will be presumed, in the absence of anything in the record showing the

contrary, that the facts thus found were proved by competent evidence. In the present case, notwithstanding the recital in the decree that the hearing was had, among other things, on oral evidence heard in open court, it will not be presumed that such evidence was heard, there being no certificate of evidence, except so far as the facts proved and found by the court are recited in the decree.

But it is urged that the findings recited in the decree are not findings of facts but of legal conclusions, and are therefore not within the rule just stated. While there may perhaps be some force in this view, we are disposed to place our decision on other grounds which will render it unnecessary for us to consider or decide it.

The principal issue of fact made by the pleadings and contested at the hearing was, whether, prior to the sale of the lot in question under the executions in favor of the defendants, Thomas Jackson had lost his homestead estate in the lot by abandonment. The evidence is undisputed that several months prior to the execution sales, he removed with his family to Morris, Grundy county, and has been living there ever since. Both he and his brother Ezekiel are barbers by trade, and both went to Morris and opened a barber's shop there, and continued to carry on that business at that place until long after the sales. The contention is, that when Thomas Jackson and family left Clinton, it was not with the intention of abandoning their residence and homestead there, but with the intention of returning within a limited period and resuming the occupancy of the lot in question as their residence. To show that the removal to Morris was only temporary, Thomas Jackson, and Mary P. Jackson his wife, who is one of the present complainants, were examined as witnesses. Both testify that, on leaving the dwelling house, they reserved a room, in which some furniture was left. Thomas Jackson does not testify in terms that he left his homestead with the intention of returning to it again, but, on

being questioned as to what his intentions in that respect were, he said: "Well, in the first place, I couldn't make any money here. I was pretty near out of money; I would have to make a raise. I didn't move with the intention of staying, only I heard Morris was a good place for barbers, and I went over there. After I got over there I found my business pretty fair. I was doctoring my wife here all the time, and after I got over there, I had to do the same thing. After I was over there a while, the doctor said my wife would have to go to the hospital. I had no money, and I had to sell the homestead to get money to doctor her with." He was then asked what, prior to the time he sold the property, was his intention as to returning to it, and answered: "I told my wife if we ever got fixed and got a little ahead we would come back to live."

Mary P. Jackson testified that they left Clinton with the intention of moving back when she regained her health, and that she and her husband, while living at Morris, talked several times about returning to Clinton. The foregoing is substantially all the evidence tending to show that Thomas Jackson, at the time he left his homestead in Clinton, did so with the intention of returning to it at a future time.

On the other hand, it is admitted by him in his testimony, that he voted in Morris at the general election held in November, 1886, which was several months prior to the execution sales, and that he had voted there at every election which has been held since that time. It is also proved by several witnesses and not disputed, that when he offered to vote at the election in November, 1886, his vote was challenged, and that, upon such challenge being interposed, he left the polls and returned shortly afterwards with his brother; that both claimed to be residents of Morris and entitled to vote at the election, and that they then both offered their ballots, and took the oath required by statute, whereupon their ballots were received and placed in the ballot box. In taking the requisite oath he must have sworn that he had been a resident of the county

42—146 ILL.

ninety days, and of the election district in which he offered his vote thirty days, and that he was then a resident of that district.

While offering to vote, or even voting, may not be conclusive of the fact of residence in a collateral proceeding, since it is possible that he may have voted illegally, yet such acts are, as against him and those claiming under him, evidence tending to show the intention with which he removed to the place where his vote is offered, and when to that is added the oath prescribed by statute where the right of the voter to vote is challenged, the evidence is very strong that a legal change of residence was intended and actually accomplished.

We are of the opinion that, from all the evidence, the court was justified in finding that Thomas Jackson, at the time he moved to Morris, did so with the intention of abandoning his homestead, and that his estate of homestead thereby became extinguished. Where there is a removal from the homestead premises, it will be taken as an abandonment, unless it clearly appears that there is an intention to return and occupy. *Buck* v. *Conlogue,* 49 Ill. 391; *Shepard* v. *Brewer,* 65 id. 383; *Vasey* v. *Board of Trustees,* 59 id. 188. But here not only is the evidence of an intention to return exceedingly weak and unsatisfactory, but the evidence the other way is, as against Thomas Jackson and his subsequent grantee, strong and convincing.

But we are unable to see upon what principle the decree, so far as it gives the defendants affirmative relief, can be sustained. The bill was brought to restrain the prosecution of an action of ejectment, and to set aside the levies, sales and sheriff's deeds under the defendants' executions. No cross-bill was filed, and no affirmative relief sought by the defendants in that manner. The court having heard the cause and reached the conclusion, which we think under the evidence was the proper one, that there was no equity in the bill, the decree should have been that the bill be dismissed at the costs

of the complainants for want of equity. The defendants would then have been left to prosecute their action at law for the recovery of possession of the premises. But instead of rendering such decree, the court, in effect, tried the suit in ejectment and rendered judgment therein, establishing the defendants' title to the premises in dispute in fee, and awarding them possession. This, under the pleadings, the court could not do.

But it is urged that, as the receiver appointed by the court held possession of the property, the only thing the court could do was to order him to turn it over to the parties shown to be entitled to it. To this view we are unable to assent. The mere application by the defendants for a receiver *pendente lite* could not take the place of a cross-bill, so as to entitle the defendants to affirmative relief. It may even be doubted whether the appointment of a receiver, under the circumstances, was proper. The defendants had their remedy for the rents and profits *pendente lite* on the injunction bond, and it would seem that they should have been left to that, and to their action for mesne profits after the recovery of their judgment in ejectment. At any rate, that portion of the decree awarding affirmative relief can find no justification in the fact that a receiver has been imported into the case.

The decree will be reversed, and the cause will be remanded to the Circuit Court, with directions to enter a decree dismissing the bill, at the costs of the complainants, for want of equity. The receiver will be discharged, on paying into court the moneys received by him from rents and profits, and those moneys will be held to apply on any judgment for rents and profits the defendants may recover, after obtaining judgment in their favor in the ejectment suit.

*Decree reversed.*