Elizabeth McBride, Appellee, *vs.* Celestia May Hawthorne *et al.* Appellants.

*Opinion filed June 24, 1915.*

1. Homestead—*question of abandonment of homestead largely one of intention.* The question whether a person has abandoned a homestead is largely one of intention, and such intention may be shown by acts or words, and statements of an intention to return may be contradicted by the facts.

2. Same—*when widow's removal from the homestead will be taken as an abandonment.* Personal residence of the widow upon the homestead premises is not essential to prevent an abandonment provided she intends, when leaving, to return and acquires no homestead elsewhere, but her removal will be taken as an abandonment unless it clearly appears she intended to return and occupy the premises.

Appeal from the Circuit Court of Ford county; the Hon. T. M. Harris, Judge, presiding.

Schneider & Schneider, for appellants.

M. H. Scott, for appellee.

Mr. Justice Carter delivered the opinion of the court:

This was a petition filed in the circuit court of Ford county by appellee, asking to have her dower and homestead assigned to her, as the widow of James McBride, in the land of which he died seized. Appellants answered, neither admitting nor denying that appellee was the wife of said McBride, and alleging that she had verbally agreed

to give up all her rights in the real and personal property of the deceased for $15,000. The case was referred to a master in chancery, who reported in favor of the complainant, and thereafter the court found that appellee was the widow of said James McBride and was entitled to dower in the real estate of which he died seized and appointed commissioners to assign the same. The decree further found that appellee was not entitled to a homestead estate in the premises of said deceased. From that decree this appeal was perfected, appellee assigning cross-errors as to the homestead estate.

Counsel for the appellants apparently concede that the marriage of appellee to the deceased was proven, as they do not argue it. The evidence fully justifies this conclusion. The marriage was celebrated in September, 1894, at Martin's Ferry, Ohio, where the appellee then resided. She was a widow with three children, aged twenty-one, eighteen and twelve, respectively. James McBride was a widower at the time of this second marriage, and left at his death two children by a deceased wife. After the marriage the McBrides went to reside at his home at Piper City, Illinois, where they lived as man and wife until his death, February 26, 1909. He died intestate, leaving appellee as his widow, and appellants, Celestia May Hawthorne and Sarah Alvira Linn, his daughters, as his only heirs-at-law. He owned at that time personal property valued at about $60,000 and something over 240 acres of farm property in Ford county, and also a house and two lots in Piper City, the latter being his homestead at the time of his death.

Counsel for the appellants argue that the appellee can not now claim dower and homestead in the real estate because she made a verbal agreement, shortly after her husband's death, to release all her rights in both the real and personal property for $15,000. The evidence shows that after McBride's death, on account of Joseph Montelius,

cashier of a bank in Piper City, being away from home, (he having charge of the papers of the deceased,) nothing was done until his return. As soon as he returned the deposit box was opened in the presence of the parties to this litigation and search made to see if there was a will (none being found) and the property listed. At this time appellee was taking her meals with appellants at the McBride homestead but apparently slept at the homes of various neighbors. Within a day after the deposit box was opened and the property listed the parties hereto met at the homestead to talk over the question of settlement, and Joseph Montelius, and M. H. Scott, counsel for appellee, were invited to be present. Appellants testified that the appellee agreed, before Montelius and Scott came to the house, to settle for $15,000, and that they were only asked to come to the house to draw the contract. Appellee denies this, insisting that before these men were called in she had talked over the matter of settlement but had not made any final agreement. After these men came, both, as we understand the testimony, advised her not to settle until she knew more definitely what the estate was worth. Montelius, with the consent of all the parties, had theretofore been appointed administrator of the estate, and at about the same time a power of attorney had been executed by appellee to him to act for her in the settlement of the estate. He held this power of attorney at the time of the conference, with full power to contract for a settlement for appellee. At this conference the testimony is all to the effect that appellee said she would do whatever Montelius advised. It is conceded, also, that he advised her not to settle at that time. Furthermore, it is clear that neither appellants nor their counsel understood that she had made a binding agreement, because it is shown, without contradiction, that at appellants' request Montelius went to Ohio some weeks later to present to appellee a proposition to settle for $18,000 for her share, he telling appellants be-

fore he started that he did not believe she would accept the proposition, and also that he had her power of attorney to settle but would not settle for that amount without her consent. The evidence further shows that one of the present attorneys for appellants called on appellee in Philadelphia, where she was then living with her son, and offered her $20,000 for her share.

In support of their position that there was a binding settlement made with appellee, counsel for appellants argue that Mrs. McBride lived away from her husband during a considerable portion of their married life and that she did not care very much for him, laying stress on certain evidence of the appellants that she slept a part of the night while he was dying. Appellee denies that she slept on that occasion, and while she admits she was often away from her husband during the last years of his life, approximately two years at one time and three years at another, she testified that she left her home because one of appellants was living at the house during all those years and insisted on taking charge regardless of what appellee wanted, and that she (appellee) told her husband she could not stay under those circumstances. We cannot see, however, what bearing this has upon the question of appellee's dower rights. The great weight of the evidence is to the effect that no final agreement was ever reached by appellee and appellants as to the amount for which she would settle her interest in the estate.

Counsel for the appellants further argue that the court should not have allowed appellee one-third of the net rental of the property in which she claims dower, from the date of the death of her husband, insisting that she should have no dower interest in the land until the decision of this case in this court, as appellants understood that she had agreed to settle and she had made no claim to have her dower assigned. With this we do not agree. The trial court's finding on this question is fully supported by the evidence.

Counsel for appellee argues that the court erred in refusing to allow her homestead rights in the real estate. The testimony shows that she was in Piper City for about a year and a half prior to her husband's death; that he died February 26, 1909, and that she left the home about March 20 of that year and returned to Ohio, leaving, as she testified, because her step-daughters, the appellants, made it so unpleasant she could not reside at the homestead. Her testimony in this cause was taken by deposition in Ohio. The question whether a person has abandoned a homestead is largely one of intention. Rights to homestead may be lost by voluntary abandonment without any intention of returning. (*Shepard* v. *Brewer*, 65 Ill. 383.) A person's intention may be shown by acts or words or both. Her statement that she intends to return may be contradicted by the facts. (*Vasey* v. *Board of Trustees,* 59 Ill. 188.) Personal residence of the widow upon the homestead premises is not essential in order to prevent abandonment, if when she leaves she intends to return and acquires no homestead elsewhere. (*Dunbar* v. *Dunbar,* 254 Ill. 281.) But where there is a removal from the homestead premises it will be taken as an abandonment unless it clearly appears that there is an intention to return and occupy it. (*Jackson* v. *Sackett,* 146 Ill. 646; *Kloss* v. *Wylezalek,* 207 id. 328.) Considering all the evidence on this question we are of the opinion that the decree of the trial court thereon should not be disturbed.

The arguments in the briefs as to whether dower can be settled by an oral agreement or whether the Statute of Frauds can be raised in this proceeding, it not having been pleaded, need not be considered in view of what has already been said.

The decree of the circuit court will be affirmed.

*Decree affirmed.*