MELAINE DINQUEL *et al.* Appellees, *vs.* LÉOPOLDINE DACCO
*et al.* Appellants.

*Opinion filed April 20, 1916.*

1. HOMESTEAD—*the question of abandonment of a homestead is largely one of intention.* The question of abandonment of homestead is very largely one of intention, to be determined from the particular facts in each case.

2. SAME—*re-marriage of widow and removal from homestead raise presumption of abandonment.* The re-marriage of a widow and removal from the homestead premises to the home of her second husband raise a presumption of abandonment of the homestead, but such presumption will yield to explanatory proof showing that the removal was intended to be temporary.

3. SAME—*homestead interest is an estate in land.* Under the present statute the homestead interest is an estate in land vested in the person designated by law, and upon the death of the householder in whom the homestead is vested the estate passes to the surviving husband or wife.

4. SAME—*when proceedings to set off homestead are unnecessary.* Where the whole premises do not exceed the value of the homestead estate the limits of such estate are already fixed, and the widow may avail herself of her rights without any proceeding for setting off the homestead estate.

5. SAME—*person having homestead estate need not occupy the premises personally.* The person in whom an estate of homestead is vested is not required to occupy the premises personally, but may rent the same or put them in the possession of one to whom she has given a deed to her interest.

6. SAME—*positive testimony by widow that she intended to return to homestead cannot be disregarded.* Positive testimony of the widow that her removal from the homestead premises was not intended to be permanent cannot be disregarded, where it is not contradicted or impeached by positive or circumstantial evidence.

7. SAME—*what does not necessarily show an abandonment of a homestead estate.* The facts that the widow, having a homestead estate in a house and several lots worth less than $1000, rents the homestead premises and goes to visit a son in a distant place, where she meets a man whom she marries and lives with in a rented house for some three years before returning to the homestead premises, do not necessarily show an abandonment of the homestead estate, where she testifies that she did not intend to re-

move permanently from the homestead premises, and where, during her absence, she received the rents therefrom.

8. SAME—*effect of increase in the value of homestead premises after estate has vested.* Where the homestead premises at the time the homestead estate vests in the widow are not worth $1000 the boundaries of the homestead estate are fixed and determined by law at that time, and she cannot be deprived of any part of it by any increase in value before beginning of a partition proceeding.

9. WITNESSES—*when widow may testify in a partition suit.* In a suit by heirs for partition and an accounting from the widow for the rents from the premises claimed by the widow as a homestead, the widow is not precluded, by section 2 of the Evidence act, from testifying to facts occurring after the death of her husband.

10. SAME—*when widow's second husband is not incompetent.* In a proceeding by heirs for partition and accounting against the widow, the man whom the widow has married since she acquired her homestead estate is not incompetent under section 5 of the Evidence act and may testify he has never owned any real estate.

APPEAL from the Circuit Court of Woodford county; the Hon. T. M. HARRIS, Judge, presiding.

FORT & FORT, for appellants.

W. H. FOSTER, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by appellees in the circuit court of Woodford county to partition certain real estate and for an accounting. An answer was filed by Leopoldine Dacco, one of the defendants, claiming that she was entitled to homestead and dower rights in said premises and that appellees were not entitled to any accounting. Other defendants answered, setting up the same defenses. The cause was referred to a master, and on his report of the evidence and his findings to the circuit court a decree was entered denying the right of appellees to an accounting, and finding that the appellant Leopoldine Dacco was entitled to dower in said premises but making no specific finding as to her home-

stead rights and ordering that said premises should be partitioned as prayed for in the bill. From that decree this appeal was perfected.

This real estate consisted of lots 6, 7, 8, 9 and 10, in block 2, of Burkholder's addition to the village of Roanoke, in Woodford county, and a strip of land twenty feet wide on the north side of said lot 10. Said property was formerly owned by Edward Fancon, deceased, the father of Melaine Dinquel and husband of Mrs. Leopoldine Fancon Dacco. Fancon had built a house of from eight to eleven rooms on lots 6 and 7, and had occupied it as a family homestead, with his wife and children, up to the time of his death, in 1896. He died intestate, seized of this property, which at that time was worth, according to all the testimony, from $750 to $890, leaving his widow, Leopoldine Fancon, and leaving as his only heirs his six children and four grandchildren, the children of a deceased daughter. The widow never demanded an assignment of her dower or the setting off of her homestead, but after her husband's death continued to live with her three minor children on this land. About seven years after her husband's death she bought a five-room house and had it moved onto the north end of the premises. Thereafter she moved from her former residence into this five-room house and resided there for three years, renting the larger house, meantime, to various tenants. In 1906 Mrs. Fancon went to Auburn, Illinois, to visit her sons, and there, about two months after her arrival, she married Constant Dacco. There is nothing in the record to show whether she was acquainted with him before, but the proof tends to show that she did not go to Auburn with any intention of marrying him. Shortly before her marriage she left the home of her son, where she was visiting, rented a house and began housekeeping. After her marriage she lived in this house with her husband for three years. At the end of that time they went to Roanoke and moved into the five-room house which Mrs. Dacco had oc-

cupied previous to the time she went to Auburn. During her residence in Auburn she collected rent on the premises here in question, excepting the part occupied by her son Adhemard. Constant Dacco never owned any real estate up to the time this bill was filed. About 1903 Adhemard Fancon, a son of said Edward Fancon, with the permission and sanction of his mother, built a three-room house on said lots 8 and 9. The testimony does not show whether any of the other heirs of Fancon were consulted regarding the building of this house. From the time of the death of Edward Fancon, Mrs. Fancon Dacco paid all taxes and assessments against this real estate, except such as were paid by Adhemard Fancon upon the portion occupied by him after he constructed said house. In 1907 or 1908 appellee Melaine Dinquel and her husband moved into the house formerly occupied by Edward Fancon and his family and occupied half of it for about five years, during all of which time she paid rent to her mother for the use of said premises or to Adhemard Fancon as the agent of his mother, except three or four months previous to the beginning of this litigation. A short time before the filing of this bill Mrs. Dacco brought suit against her son-in-law, Emile Dinquel, for possession of the part of the house occupied by him and his wife and recovered judgment against him. The bill alleges that the two buildings placed upon these premises by Mrs. Dacco and her son Adhemard Fancon were placed there without the knowledge or consent of any of the other parties interested, and that they should account for a reasonable rental therefor; that by her removal from said homestead Mrs. Dacco abandoned her rights of homestead therein and should render an accounting for the rents thereafter collected by her.

The chief question argued in the briefs in this case is whether appellant Leopoldine Dacco abandoned her homestead rights in the premises here in question. Counsel for appellees does not deny that she acquired a right of home-

stead in the land at her husband's death. He argues, however, that by placing a cottage on lots 9 and 10 and removing thereto she lost her homestead rights in lots 6 and 7, and that by allowing her son to build a home for himself on lot 8 and the south half of lot 9, and to reside and pay taxes thereon, she lost her rights in that portion of the property; and finally, that her removal to Auburn and residence there for three years after her marriage with Dacco constituted an abandonment of her homestead rights in all parts of the premises.

The question of abandonment of homestead is very largely one of intention, to be determined on the particular facts of each case. (*McBride* v. *Hawthorne,* 268 Ill. 456; *Ketcham* v. *Ketcham,* 269 id. 584; 21 Cyc. 603.) Where there is a removal from a homestead it will be taken as an abandonment, unless it is clear that there is an intention to return and occupy. (*Jackson* v. *Sackett,* 146 Ill. 646; *McBride* v. *Hawthorne, supra; Kloss* v. *Wylezalek,* 207 Ill. 328.) The re-marriage of a widow and removal to the home of her second husband raise a presumption of abandonment of her homestead, yet such presumption will yield to explanatory proof showing the removal was meant to be temporary. (*Loveless* v. *Thomas,* 152 Ill. 479.) In the case just cited, the wife, after the death of her first husband, intermarried with Samuel Thomas and removed from the premises which up to that time had been her homestead to Thomas' residence. Within five months she returned to her former home and was residing there when the bill for partition of the premises was filed. She testified that she did not intend to live permanently at her second husband's home but expected to induce him to remove to the home in question with her, she having left a portion of her household goods there. This court held that evidence sufficient to rebut the presumption of an abandonment of the homestead. By section 1 of our statute on homesteads an estate of homestead was created of the value of $1000. (*Hagerty*

v. *Hagerty,* 149 Ill. 655.) Under the present statute the homestead is an estate in land, vested in the person designated by law. (*Eldridge* v. *Pierce,* 90 Ill. 474; *Kitterlin* v. *Milwaukee Ins. Co.* 134 id. 647.) By the death of the householder in whom the homestead is vested the estate passes to the surviving husband or wife. (*Capek* v. *Kropik,* 129 Ill. 509; *Kingman* v. *Higgins,* 100 id. 319.) Where the whole premises do not exceed in value the homestead estate the limits of such estate are already fixed, and the widow may avail herself of her rights without any proceeding for setting off the homestead. (*Garwood* v. *Garwood,* 244 Ill. 580.) The person in whom the estate of homestead is vested may rent the premises, (*Browning* v. *Harris,* 99 Ill. 456,) or may occupy them by another person to whom she has given a deed to her interest therein. This is simply another mode of enjoying the rights secured by statute. If the homestead may be leased for a single year it may be done for any number of years, not exceeding the life of the owner of the estate. *White* v. *Plummer,* 96 Ill. 394; *Plummer* v. *White,* 101 id. 474.

The only direct testimony in this record concerning the intention of Mrs. Dacco with regard to her homestead rights at the time of her removal was given by her. She testified that her object in going to Auburn was to visit her son; that she made her home with her son upon her arrival there and never intended to abandon her homestead rights. No testimony was given by appellees to disprove this statement. They rely solely upon the removal of Mrs. Dacco to Auburn and three years' residence there after her marriage to contradict her testimony. Positive testimony of a witness, uncontradicted or unimpeached either by positive testimony or by circumstantial evidence, either intrinsic or extrinsic, cannot be disregarded. (*People* v. *Davis,* 269 Ill. 256; *Larson* v. *Glos,* 235 id. 584.) There is nothing improbable in her testimony as to the circumstances of her removal and her intention regarding her homestead rights.

The man she married had never acquired any real estate up to the time this litigation was commenced, and she left a part of her household goods in Roanoke. The fact that she rented the property to tenants for some years does not tend to show that she had abandoned her homestead rights. On the contrary, all of her actions with reference to renting the property tend to confirm her statement as to her intention; and the actions of' her children, including the appellee Melaine Dinquel, strongly corroborate her in that regard. All the facts in the record are consistent with her testimony on this point.

Counsel for appellees insists that under section 2 of our statute on evidence Mrs. Dacco was not a competent witness on her own behalf in this proceeding, being the widow of Edward Fancon, for the partition of whose real estate this bill was brought. That section provides, among other things, that the party or interested person may testify to facts occurring after the death of such deceased person. All of the facts concerning which Mrs. Dacco testified occurred after the death of said Edward Fancon, except the fact that she had been his wife, that he owned the property described in the bill and that it was occupied by him as a homestead. All of these facts had been testified to by appellee Melaine Dinquel and there is no dispute about any of them.

Counsel further objects that · the husband, Constant Dacco, was incompetent to testify for his wife under section 5 of chapter 51 of our statutes. Under this section the husband can testify for the wife where, if she were unmarried, she would be plaintiff or defendant. It is manifest that the wife here would have been a party if she were unmarried. Constant Dacco only testified that he had never owned any real estate previous to this litigation. His testimony on this point was not incompetent. *Booker* v. *Booker,* 208 Ill. 529.

In this case, by undisputed proof, the premises were not worth $1000 when the estate of homestead vested in Leo-

poldine Fancon Dacco, and the boundaries of the homestead estate must be considered as fixed and determined by law at that time. The widow cannot be deprived of any part of it by any increase in value before this proceeding. (*Garwood* v. *Garwood, supra; Atherton* v. *Hughes,* 249 Ill. 317.) On the testimony in this record Mrs. Dacco was clearly entitled not only to dower but to a homestead in the premises here in question.

The decree of the circuit court will be reversed and the cause remanded, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*