## A. Kneisel et al. v. Ursus Motor Company et al. Chicago Title & Trust Company, Receiver of Ursus Motor Company, Defendant in Error, v. Harry J. Myerson, Plaintiff in Error.

### Gen. No. 29,474.

1. APPEAL AND ERROR—*dismissal of intervening petition for want of prosecution as appealable order.* An order dismissing an intervening petition for want of prosecution was reviewable where said order, and certain other orders complained of, had the effect to finally deny to the petitioner the right to moneys claimed by him as fees.

2. RECEIVERS—*burden of proof under intervening petition.* Orders in a pending receivership proceeding requiring a solicitor to either repay moneys paid him by the receiver as fees without order or approval of the court or to show cause are not the initiation of proceedings against the solicitor for the return of such moneys which throws the burden of proof as to the right of the solicitor to compensation for his services on the new receiver, but where the solicitor repaid the moneys and then filed an intervening petition alleging his right to such moneys he has the burden of proving the allegations of his intervening petition in the first instance.

3. EQUITY—*waiver of nonjoinder of issues by failure to object to want of answer.* The formality of making up an issue by the filing of an answer to a petition in a chancery cause was waived when the petition was called for a hearing at which the petitioner's solicitor appeared but made no objection to a hearing before the filing of an answer.

4. RECEIVERS—*when solicitor required to establish right to fees in receivership.* A solicitor who is ordered to refund moneys paid him as fees and compensation for services in receivership proceedings by the receiver or to show cause and who refunds the moneys and files an intervening petition setting up his title to the moneys is required to prove the allegations of his petition in the first instance at the hearing on his petition even though no answer thereto is filed.

5. RECEIVERS—*possession as prima facie case of ownership.* Mere possession by a solicitor of fees paid him irregularly by a receiver who has mismanaged the receivership estate and commingled its funds does not constitute a prima facie case of ownership and title to the money in question.

6. RECEIVERS—*jurisdiction in proceeding to require solicitor to refund fees paid by receiver.* The circuit court has jurisdiction in a pending receivership proceeding to enter orders requiring a

Kneisel v. Ursus Motor Co., 238 Ill. App. 50.

solicitor to restore moneys paid him by the receiver as fees and compensation without any order or approval of court, or to show cause with leave to file intervening petition on payment, since the receiver as such and the solicitor as an officer of the court are subject to the court's jurisdiction and the receivership proceeding is within the subject-matter jurisdiction.

7. DISCONTINUANCE, DISMISSAL AND NONSUIT—*when intervening petition properly dismissed for want of prosecution.* The dismissal of an intervening petition filed by one who was a solicitor for the original receiver in the case in question, for want of prosecution, was not error, where the person appointed as receiver in such case was removed and another receiver appointed, and where said solicitor, pursuant to a hearing of all causes in which the old receiver had acted as receiver, was subsequently ordered to either pay stated sums to the new receiver, subject to the right of such solicitor to be reimbursed for services and expenses, or show cause in open court why he failed to comply, and such solicitor was given leave to file said intervening petition, making claim for his services rendered by him to said old receiver, and for expenses incurred, and where said solicitor paid said money into court, and subsequently filed said petition, and when it was called for hearing and no answer had been filed by the new receiver, the petitioner, by his solicitor, refused to present any evidence to support its allegations, upon the court ruling that the petitioner had the burden of proof and should first introduce evidence.

8. APPEAL AND ERROR—*presumption on appeal that orders based on sufficient evidence.* Where orders recite that the court heard evidence in open court in the matter pursuant to which such orders were entered, including the testimony of named persons, but such testimony is not disclosed by any certificate of evidence, it will be presumed that the facts as found in the orders were based upon sufficient evidence.

9. APPEAL AND ERROR—*compliance with alternative order as rendering order functus officio.* Where certain orders directed a solicitor either to pay the money mentioned to the new receiver in question or show cause why he had not so done, and the money was paid, the orders were *functus officio,* and were so treated on review.

10. RECEIVERS—*checks signed by maker as receiver as notice of character of funds drawn on.* Taking money by checks signed by the maker, as receiver, constitutes notice that the funds out of which the payments were made were receivership funds.

11. ATTORNEYS AND COUNSELORS—*when payments by receiver to solicitor properly ordered repaid without determining propriety of allowance.* Payments received by an attorney as solicitor for one who acted as receiver in many estates, without obtaining a previous

order of court authorizing such payments and at the time acquainting the court with the situation, tended prima facie to show an unlawful conversion by such attorney of the amounts of payments made by checks signed as receiver, and it was not improper for the court in the proceedings in question to order the attorney to repay the same before considering what amounts were properly due to the attorney for legal services rendered.

Error by defendant to the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in the second division of this court for the first .district at the October term, 1924. Affirmed. Opinion filed July 14, 1925.

JOHN A. BLOOMINGSTON, for plaintiff in error.

ANGUS ROY SHANNON, MICHAEL FEINBERG and HAMILTON MOSES, for defendant in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

By this writ of error Harry J. Myerson seeks to reverse an order of the circuit court of Cook county, entered May 13, 1924, dismissing for want of prosecution his intervening petition, filed on March 11, 1924, in the pending chancery cause of *Kneisel et al. v. Ursus Motor Company et al.* (hereinafter referred to as the Ursus case).

The bill in the Ursus case, filed March 2, 1922, by certain minority stockholders of the Ursus Motor Company, prayed for an accounting and other relief. Myerson was one of the solicitors filing the bill, and on the day of its filing Jacob Goldman was appointed receiver of the company and he qualified and took possession. The Ursus case had been assigned to the calendar of Judge Rush, one of the judges of the circuit court, and Goldman was acting as receiver in many other chancery causes pending in said court. On April 20, 1923, the executive committee of the judges of the court, acting under the rules of the court, reassigned the Ursus case to Judge Scanlan, another of the judges of the court, and he conducted

an investigation of Goldman's acts and doings as receiver in the Ursus case. Subsequently the executive committee ordered that a separate chancery calendar be prepared of *all* causes in which Goldman had acted as receiver and that all said causes be assigned to Judge Scanlan. As a result of the investigation in the Ursus case and "upon evidence adduced and heard in open court," the court (Judge Scanlan), on May 14, 1923, entered an order removing Goldman as receiver in the Ursus case and appointed in his stead the Chicago Title & Trust Company, and it took possession and entered upon its duties. The court reserved jurisdiction to pass upon and determine all matters or claims by or against Goldman, including all claims and liens by him for services and disbursements and further ordered that he forthwith deliver to the new receiver all property, books, etc., in his possession, and that within 10 days he file with the clerk a full and complete account under oath of his acts, doings, receipts and disbursements, together with vouchers. No account was filed by him.

On May 28, 1923, the court entered a draft order, entitled in the Ursus case and containing a recital and many findings, in which Myerson *in the alternative* was directed *either* to pay to said new receiver, Chicago Title & Trust Company, on May 31, 1923, at 10 o'clock a. m., the sum of $4,883.25, subject to his right to be reimbursed for the services and expenses, or any part thereof, mentioned in the findings, "or in default * * * of such payment by him * * * that he then and there, in open court, show cause, if any he have, why he shall not have complied with this order and rule." And it was further ordered that *upon the payment* of said sum to the new receiver Myerson be given leave within 60 days "*to file his intervening petition,* or petitions, making claim for services and expenses rendered by him to said Jacob Goldman, as receiver, in any of the causes hereinbefore mentioned, or setting up any other lawful claim or demand he may

have against any of the estates, or funds thereof, in the aforesaid causes, or contesting the propriety of this order directing the repayment, as aforesaid, of said $4,883.25, or any part thereof.'' On the following day Myerson paid to said new receiver the sum of $4,883.25.

In the recital in said order it is stated that the cause came on to be heard ''upon the court's own motion'' to investigate Goldman's conduct as receiver in the Ursus case and his fitness to continue as receiver, and to determine whether he has in his possession and control the estate which came to him as receiver, and to discover and recover such of the assets of the estate as the court should find have been improperly expended by him, and that the court ''heard the evidence adduced in open court, including the testimony of Jacob Goldman and the testimony of Harry J. Myerson.'' Then follow findings that the court *has jurisdiction* of the parties and of said Goldman and said Myerson and of the subject matter; that Goldman ''has commingled the assets he has collected, as receiver in this estate, with assets he has collected in a large number of other estates, including all of the estates involved in the several causes hereinafter mentioned,'' in which Myerson has been paid moneys by Goldman, receiver, ''without any court order authorizing the same''; that Myerson claims that such payments were for legal services and expenses as hereinafter set forth; that Goldman during all of the time has had no assets other than those belonging to the estates of which he was appointed receiver, that he kept bank accounts in the name of ''Jacob Goldman'' and ''Jacob Goldman, Receiver,'' and that he ''indiscriminately has deposited in and expended for any and all purposes out of said bank accounts the funds of this and the other estates of which he has been appointed receiver''; that each and all of said court causes in which Myerson has been paid funds by Goldman, as receiver, ''are pending in

this court, and have been duly assigned to this judge for hearing and determination''; that Goldman has been removed as receiver in this and in each of the other court causes, and that the Chicago Title & Trust Company has been appointed receiver in all of the causes; that Myerson is, and at the happening of each occurrence was, an attorney at law, ''and as such an officer of this court practicing at the bar thereof,'' and that he has appeared at the bar of this court as solicitor for Goldman, as receiver, in the administration of the respective estates in said causes. Then follow findings as to various sums of money, aggregating $4,883,25, found to have been paid to Myerson by Goldman, receiver, in said several court causes, said sums being mostly for legal services claimed to have been rendered by Myerson to Goldman. One item is for $49.75 for costs in the Ursus case, claimed to have been advanced by Myerson for Goldman, as receiver. Another item is for $340 received by Myerson from Goldman for legal services claimed to have been rendered by Myerson in the matter of Standard Dry Goods Store, wherein Goldman was acting as the voluntary assignee and the proceeds of the assets of the said estate were paid into the bank account carried in the name of ''Jacob Goldman, Receiver,'' and the check for said $340 was signed ''Jacob Goldman, Receiver.'' Another similar item is for $250, similarly paid, in the matter of the Garden City Tile Company, wherein Goldman was acting as voluntary assignee. Another item is for $500, paid to Myerson and claimed by him to have been paid ''on account of *general services* rendered by him to Goldman, Receiver, in the above and other cases pending in the Circuit Court, said payment having been made by check signed 'Jacob Goldman, Receiver,' upon the bank account mentioned.'' Then follows: ''The court makes no finding as to whether said payments were made as above claimed by said Myerson, but does find *that each of said payments was made to said Myerson without any order of this*

*court* first and obtained, * * * authorizing the same and * * * that when said payments, and each of the same, were made * * * the said Myerson *knew* that the said Goldman *had commingled the assets of the estates,* of which he had been appointed receiver." Then follows the finding: "That, the premises considered, the said Harry J. Myerson is therefore now wrongfully withholding the sum of $4,883.25 from the receiver herein, and that the court heretofore has demanded, in open court, that said Myerson pay to the Chicago Title & Trust Company as receiver, said sum, which he has refused and failed to do, and he is now insisting in open court that he is not liable to pay back to said Goldman, receiver, or to said Chicago Title & Trust Company, receiver, any part of said sum."

Following the entry of this order further investigations were conducted by the court, and on July 5, 1923, another order was entered in the Ursus cases against Myerson, which is substantially the same as said order of May 28, 1923, except as to amount, the later order having reference to the sum of $1,250, which the court found Myerson had received from Goldman, receiver, without any order of court, for legal services claimed to have been rendered Goldman as receiver in two other pending causes. This order was also in the alternative, and on July 11, 1923, Myerson paid to the Chicago Title & Trust Company the sum of $1,250.

After the court on Myerson's motions had extended on several occasions the time within which he might file an intervening petition as mentioned in said orders, he, on March 11, 1924, filed in the Ursus case a sworn petition, in which he prayed that the court order the new receiver to return to him said sums of $4,883.25 and $1,250. He set forth affirmatively and in detail the services which he claimed he had rendered Goldman, as receiver, in the various court causes mentioned in the two aforesaid orders, and also men-

tioned many other causes pending in said circuit court in which Goldman was acting as receiver, and claimed that he had rendered legal services to Goldman in said other causes for which he had not received any compensation whatsoever. He alleged in substance that in those causes in which he had received payments from Goldman, although no order of court had been entered specifically authorizing said payments, there had previously been entered in each cause an order "permitting the receiver to employ counsel"; that said sums of $4,883.25 and $1,250 (repaid by him under the two aforesaid orders) had been paid to him by said Goldman, *"doing business* under the firm name and style of Jacob Goldman, Receiver," and were for moneys advanced and services rendered by him "to said Jacob Goldman *individually* and *doing business* as Jacob Goldman, Receiver"; that the word "Receiver" affixed to Goldman's name was "merely descriptive," and "was used by Goldman in all of his advertisements in the newspapers and in his personal correspondence, and *was nothing more than the trade name* under which said Goldman was doing business"; that said affix "Receiver" to Goldman's name "did not mean receiver of any particular estate in any particular court and had nothing to do with the cases in which he was receiver" in any particular court, or in which he was assignee for the benefit of creditors of any estate; that it is and always has been his (petitioner's) understanding that when a receiver "employs counsel pursuant to an order of court," such receiver "is *individually* liable for the contract price of the services rendered, or the reasonable value thereof in the absence of a contract," and such receiver "must *individually* discharge this liability and *subsequently* ask credit therefor in his final report, and that the court will allow him credit for the reasonable value of the services rendered by his counsel to him"; that petitioner believes that all fees paid to him by Goldman were paid in every instance "out of the pri-

vate bank account of said Goldman, doing business as Jacob Goldman, Receiver, in which he deposited *all* funds that he received from any source, including fees and commissions earned by him''; that, until the taking of the testimony before the circuit court, petitioner supposed that Goldman was a man of large wealth and of excellent business standing and integrity, and it never occurred to petitioner that Goldman was wrongfully disposing of any of the assets intrusted to him in any of said court causes; that, in addition to acting as receiver in said causes in the circuit court, Goldman also acted as voluntary assignee for the benefit of creditors in at least two cases in which petitioner was employed by him as counsel; that, in the matter of the Standard Dry Goods Store, Goldman, as assignee, received certain assets and property, sold the same and deposited the same in his said private bank account, and that in the matter of the Garden City Tile Company he did the same; that neither of these cases was ever before any court and ''had nothing to do with the assets claimed by this court to be a part of the assets of the estates pending before it''; that said payments of $340 and $250, respectively, should not be confused with the cases pending before this court, and that said sums should be returned to petitioner by the Chicago Title & Trust Company, receiver; and that *all* the above mentioned payments made by Goldman to petitioner for legal services ''are the fair, reasonable and customary charges made for services rendered in such matters.''

The new receiver, Chicago Title & Trust Company, did not file an answer to Myerson's petition and no rule upon it to answer it was ever asked or made. There was, however, a hearing upon the petition in open court, at which Myerson was represented by his solicitor, but Myerson himself did not appear. Following the hearing the court entered the order of May 13, 1924, dismissing Myerson's petition for want of prosecution. In the draft of the order as entered

the court states that Myerson's solicitor came, but that Myerson personally did not appear, and the court further states that "thereupon the Court calls upon said petitioner to present such evidence as he may care to adduce in support of his said petition, and the said Harry J. Myerson comes not, nor comes anyone in his behalf to present such proof." A certificate of evidence of what occurred on said hearing is contained in the present transcript of the record, but Myerson did not preserve any certificate of evidence as to the testimony heard and the proceedings had, upon which the said order of May 28, 1923, and July 5, 1923, and the findings therein contained, were predicated.

It appears from the certificate of evidence of the "proceedings had upon the calling for hearing" of Myerson's petition, the solicitor for Myerson stated and insisted that said orders of May 28, 1923, and July 5, 1923, were "initiating papers in a new proceeding and that the *burden of proof* as to the ownership of the fund deposited in court is on the receiver, or the court, to prove *the allegations of those orders*"; and that the solicitor for the receiver stated his theory to be that the matter comes on to be heard upon Myerson's petition, setting forth affirmative facts and asking for affirmative relief, and that if Myerson does not present affirmative proof in support of the allegations of his petition there is nothing for the receiver to meet, and the result necessarily must be the dismissal of the petition for want of prosecution. A lengthy discussion followed. Myerson's solicitor argued that moneys paid over to the new receiver, in compliance with said orders of May 28 and July 5, were Myerson's property, and that such property had been taken away from him which prima facie belonged to him, "as possession is all that is necessary to establish ownership." The receiver's solicitor argued that the purpose of the court in entering said orders on Myerson to pay back said moneys was to put him in the same

position he would have been in had he not received the unauthorized payments from Goldman, and that he might properly ask the court for fees for legal services, at which time he should show what services he actually did render and give proof of the value thereof. The court in effect ruled that Myerson had the burden of proof and should first introduce evidence. The court stated in substance that said two orders of May 28 and July 5, based upon Myerson's statements made at the hearings prior to their entry, ''gave rise to the right of Myerson to file a petition for the return of the moneys, on the theory that he had rendered services and should be compensated for them and that the amounts which had previously been paid him were reasonable''; that acting under said orders, which were in the alternative, Myerson decided that he would pay back said moneys, and exercise the privilege given him therein of filing a petition to sustain his contention that he was entitled to said moneys for fees, and that he did file such petition; and that under the circumstances it was necessary for him to introduce evidence to sustain his position, and ''either to prosecute his petition or abandon it.'' Thereupon Myerson's solicitor stated that ''we will simply have to stand on the record,'' and refused to introduce any evidence on Myerson's behalf in the first instance, and thereupon the court entered the order of May 13, 1924, dismissing Myerson's said petition for want of prosecution.

Counsel for the receiver urge that this Appellate Court is without jurisdiction in this writ of error proceeding to review the order of the circuit court of May 13, 1924, dismissing Myerson's petition for want of prosecution, and for the reason that the same is not such a final order as terminates the litigation regarding the moneys in question. As appears from Myerson's *præcipe* filed in this Appellate Court for the writ, and also from his counsel's brief and argument, he not only complains of said order of May 13,

1924, but also of said prior orders of May 28, 1923, and July 5, 1923. We think that the effect of all three orders is to finally deny to Myerson the right to said moneys as fees and that he is entitled to a review of the proceedings. Reviewing courts in this State in certain instances have entertained appeals or writs of error calling in question the actions of trial courts in dismissing bills, petitions or cases for want of prosecution. (*Larkin v. Wiley*, 312 Ill. 268; *Bonney v. McClelland*, 235 Ill. 259; *Tullis v. Henderson*, 26 Ill. 442; *Lapka v. Chicago City Ry. Co.*, 139 Ill. App. 133; *Meyer v. Lurya Lumber Co.*, 203 Ill. App. 300.)

One of the grounds relied upon by counsel for Myerson for a reversal of the order of May 13, 1924, dismissing Myerson's petition for want of prosecution, is that the orders of May 28 and July 5, 1923, constituted the "initiation of proceedings" against Myerson for the return of the moneys, in the nature of rules to show cause; that Myerson's petition afterwards filed should be considered rather as an *answer* to those rules, and that the burden of proving the allegations therein contained did not rest upon Myerson in the first instance. After reviewing the present record and considering the alternative provisions of said two orders of May 28 and July 5, 1923, and considering the further fact that Myerson decided to comply with the first alternative mentioned and paid the moneys to the new receiver, we are of the opinion that the burden of proving the affirmative facts as alleged in his petition of March 11, 1924, rested upon him, and that this is so even though said receiver filed no answer to the petition. We think that the formality of making up the issue by the filing of an answer by the receiver to the petition was waived when the petition was called for hearing, at which Myerson's solicitor appeared but made no objection to a hearing before said receiver had filed an answer. (*Jackson v. Sackett*, 146 Ill. 646, 653.) Furthermore, it appears that Myerson was given full opportunity by

the court to introduce evidence to sustain the allega-
tions of his petition, and show, if he could, that he
was entitled to the moneys for proper services ren-
dered, but he saw fit not to do so, preferring, as stated
by his solicitor, "to stand on the record." And we
do not think that there is any merit in counsel's fur-
ther contention that the allegations of Myerson's
sworn petition (there being no answer filed thereto)
were "self-established." Notwithstanding his *claim*
that he was entitled to the moneys which Goldman
had paid him, we think that it was incumbent upon
him to *prove* under the allegations of his petition that
such payments had in fact been made to him by Gold-
man for legal services in the several estates, and that
the amounts were reasonable and customary, keeping
in mind the character of the services and the size
of the estates. And we do not think, under the circum-
stances disclosed as to Goldman's acts and conduct in
administering the several estates intrusted to his care,
that the fact that Myerson had become *possessed* of
the moneys paid to him for fees by Goldman made
out a prima facie case for Myerson that he lawfully
owned and was entitled to keep said moneys.

Counsel also contends that notwithstanding the re-
cital in the orders of May 28 and July 5, 1923, that
the court had jurisdiction of Goldman and Myerson
and the subject matter, the court was without jurisdic-
tion to enter said orders, which in the first alternative
directed Myerson to pay the amounts mentioned there-
in to the new receiver, and, if such payments were
made, giving him leave thereafter to file an interven-
ing petition. The argument is (citing the cases of
*Becklenberg v. Becklenberg*, 232 Ill. 120, 122, and
*French v. French*, 302 Ill. 152, 158) that such a re-
cital "is a mere conclusion and is not a sufficient find-
ing of the jurisdictional facts." We think that it
sufficiently appears from the present record that the
court had jurisdiction of Goldman and Myerson, the
former being the court's receiver and the latter be-

ing an officer of the court and one of the solicitors for the complainants in the Ursus case, and that the court had jurisdiction of the subject matter, as recited in said orders. Furthermore it appears from the recital in said orders that the court had "heard the evidence adduced in open court, including the testimony of Jacob Goldman and of Harry J. Myerson." What the evidence, including said testimony, was is not disclosed by any certificate of evidence contained in the present transcript, and it must be presumed that the facts as found in the orders were based upon sufficient evidence. (*King v. King*, 215 Ill. 100, 115; *Richardson v. U. S. Mortgage & Trust Co.*, 194 Ill. 259, 264.) Furthermore these orders became, so to speak, *functus officio*. They directed Myerson to do one of two things, either to pay the money mentioned to the new receiver or show cause why he had not done so. He paid the money. No further action was *required* of him. He was, however, given leave to file a petition making claim for fees for services rendered to Goldman, as receiver. After a considerable lapse of time he filed his petition on March 11, 1924, and when it was called for hearing his solicitor refused to present any evidence to support its allegations, and under the facts and circumstances disclosed we do not think that the court abused its discretion in dismissing said petition for want of prosecution.

Counsel also contends that the mere fact that Goldman, out of receivership funds in his hands, paid moneys to Myerson for legal services rendered, without obtaining previous orders of court authorizing the payments, does not render Myerson liable to refund the amounts in such a summary proceeding as the present one. But the record discloses that Myerson did refund certain amounts received by him from Goldman. And in considering counsel's contention we cannot lose sight of the fact that Myerson, when he received the payments from Goldman by checks, signed "Jacob Goldman, Receiver," knew that the

funds out of which the payments were made were trust funds and that the assets of the many estates for which Goldman was receiver had been commingled and put in one bank account. Under the circumstances we think that said payments received by Myerson from Goldman, without getting a previous order of court authorizing said payments and at the time acquainting the court with the situation, tended prima facie to show an unlawful conversion by Myerson of the amounts of said payments, and that it was not improper for the court to order that Myerson repay the same before considering what amounts were properly due to Myerson for legal services rendered. (*Squire v. Ordemann*, 194 N. Y. 394, 396.)

Our conclusion is that the order of May 13, 1924, in question, wherein Myerson's said intervening petition was dismissed for want of prosecution, should be affirmed, and it is so ordered.

*Affirmed.*

BARNES, P. J., and FITCH, J., concur.